**GULF POWER COMPANY, Appellant,**

v.

**LOCAL UNIONS NOS. 676 AND 1078 OF PENSACOLA, FLORIDA, OF THE INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, Labor Organizations, Appellees.**

**No. 15559.**

United States Court of Appeals
Fifth Circuit.

Jan. 19, 1956.

Bert Lane, Yonge, Beggs & Lane, Pensacola, Fla., Frank A. Constangy, Atlanta, Ga., for appellant.

Philip D. Beall, Pensacola, Fla., Joseph Jacobs, Atlanta, Ga., Jacobs & Jacobs, Atlanta, Ga., for appellees.

Before HUTCHESON, Chief Judge, and TUTTLE and BROWN, Circuit Judges.

BROWN, Circuit Judge.

This case involves the erroneous use of summary judgment.

The suit, filed in the Florida State Court, removed for diversity, was by appellees, two local Unions against the employer, Gulf Power Company, for declaratory relief, Section 87.01, Florida Statutes of 1941, F.S.A. The claim was that, since the opening, about ten years previously, of the new steam plant on the Escambia River, approximately 12 miles from the City of Pensacola, Florida, free transportation was furnished by Power Company to and from the employees'

homes and the plant; and that, represented throughout by the Power Company to be a "part of the compensation and pay" of the employees, it was an express or implied condition of the written Collective Bargaining Contract (effective until March 1, 1955) between the two Unions and the Power Company. The Complaint incorporated the entire annexed Collective Bargaining Contract [1] and alleged that, despite demand made pursuant to it by the Unions, the Power Company had refused to submit the dispute to the contract grievance machinery, including arbitration. The relief sought, however, based on the Power Company's contention that such transportation was not a contract obligation, was primarily for a declaration of rights.

The Power Company's answer and counterclaim admitted, of course, the written Collective Bargaining Contract but denied that any Contract had been made to furnish this transportation. The answer set forth in considerable detail that as the plant had been commenced during the war years when rationing made private transportation impracticable, the Company had undertaken, as a temporary measure, to provide this transportation but under the express declaration, repeated from time to time, that it would be discontinued as soon after the third generating unit was completed as it appeared that private transportation was available which conditions, it further alleged, were fulfilled by late 1953 resulting in the notice to terminate March 1954. It asserted further that, on the giving of the notice, did the Unions, for the first time, contend otherwise. So far as adjustment through grievance machinery, the Company alleged that it was the Unions, not it, who were failing to follow the specified procedure. Availability of arbitration was denied but for the specific reason only that what the Unions sought by arbitration was to amend or supplement the Agreement—a matter expressly excluded from arbitration.[2]

At this stage the Power Company filed [3] what it described, and the court apparently treated, as a motion for Summary Judgment. Submitted apparently without opposition as to its propriety,

1. As the Contract does not refer to this or any similar transportation, the Union taking the preamble:

"That for the purpose of facilitating the peaceful adjustment of all disputes which may from time to time arise, and to establish a standard of conditions under which the employees covered by this Agreement shall work for the Company during the term of this Agreement, and to provide for rates of pay, hours of work and *other conditions of employment* for such employees, and to promote harmony and efficiency in the departments of the Company where members of the Union are employed, the parties hereto contract and agree with each other as follows [emphasis supplied]" apparently read it as though "other conditions of employment" automatically embraces as terms of the written Contract any such condition or practice.

2. The Contract provided:
"Article VII.
"Arbitration.
"52. In case of a dispute concerning the interpretation of any of the provisions of the Agreement, or any grievances under this Agreement, or any violation of the employees' rights under this Agreement that cannot be settled by the Company and local representatives of the Union, the matter shall * * * [be referred to the Arbitration Board specified] * * *. This Arbitration Board shall hear all evidence and arguments on the points in dispute and the written decision of a majority of the members of such Board shall be final and binding upon the parties hereto. The Arbitration Board shall not amend or supplement this Agreement. * * *"

3. The entire motion reads:
"The defendant moves the Court to enter a judgment for the defendant decreeing its right to discontinue the transportation described in the complaint, the answer and the counterclaim upon the ground that it appears from the case file that the defendant is entitled to such a judgment as a matter of law."
Its cryptic language leaves doubt that it was anything more than a motion for judgment on the pleadings, see Fed.Rules Civ.Proc. rule 12(c), 28 U.S.C.A., but if so, the same issues of fact making summary judgment erroneous would prohibit its use under that Rule.

the court granted summary judgment, but for Union against Power Company and ordered arbitration under the contract.[4]

■ We are of the clear opinion that, in this posture, this case was not ripe for summary judgment. From the face of the pleadings and the broad contentions permissible under them, it is plain that at least two disputed issues emerged: (1) the extent, nature and terms of the understanding, undertaking or agreement, if any, concerning the furnishing of the transportation; and (2) the existence, nature and extent of the contract of employment to which, it was claimed, the agreement to transport was an expressed or implied incident, with particular reference to the relationship, if any, to the Collective Bargaining Agreement.

On the first, it is evident from the pleadings that the parties recognized that not all was covered by the Collective Bargaining Contract, and that some character of arrangement for transportation had in fact been made. The Unions claimed that what the Power Company furnished, it did because it had agreed to provide it, the Power Company contended that all was done voluntarily as a temporary measure with full liberty to discontinue at will. Whether it was an agreement as claimed by the Unions or a pure gratuity as claimed by the Power Company, if an agreement, its extent in terms of time, the Company's right, if any, to reconsider from time to time, these and many others, were all live and hotly contested issues requiring trial. And once this was determined, the second inquiry became pertinent insofar as any particular relief flowing from decisions on the first question depended upon the written Collective Bargaining Contract. There was thus presented the probable necessity of determining whether the entire contract of employment between Company and the individual workers concerned was compressed into the Union Collective Bargaining Contract, or whether there were, of which Escambia transportation might be illustrative, numerous other implied undertakings between employee and Company forming the actual employment contract;[5] and, if so, to what extent, if any, the "implied" agreement between individual worker and Company incorporated the written Collective Bargaining Contract and vice versa.

■ Just what was the contract of employment containing the alleged transportation agreement which the Unions sought to enforce for its affected members, and the extent to which the Collective Bargaining Agreement either was it,

4. The Court's memorandum concluded: "The facts upon which this issue may be resolved are not in dispute in this case and the pleadings upon the issue presents merely a question of law for the Court's determination. The Court has carefully considered the agreement between the parties, its broad scope and purpose and all the uncontroverted facts disclosed by the pleadings and is of the opinion that the issue raised by the controversy is one within the purview of Articles VI and VII of the agreement and plaintiffs are entitled to have the question submitted to arbitration, pursuant to the provisions of Article VII of the agreement."

5. The Company, pointing to the detailed subject-matter topic headings in the Collective Bargaining Contract, e. g., classification of employees, wages, hours of work, work week, call out, schedules, overtime pay, notice, holidays, vacation, telephone charges, meals, board and lodging, safety, accident investigations, rain coats, tools and equipment, composition of crews, leaves for union affairs, qualifications in grade, use of supervisory personnel, up-grading, lay-off, promotion, demotion, seems to argue that this writing covered everything.

The Union points, in brief, to the following instances covered by some agreed practice but not specified in the written contract as showing that the contract of employment included *something* else: lunch periods, relieving prior shift; injured workmen, difference in compensation and regular pay; time off as witness or juror; lockers to be provided; showers to be provided; time of shift changes; company-paid hospitalization, health and accident insurance, etc.

or a part of it, or the one embraced the other, were questions of fact, with dependent questions of law depending upon findings of fact.[6] These basic matters were but barely sketched in the pleadings and, uncertain and disputed by nature and contention of parties, called for resolution by trial, not by summary judgment which envisages the absence of a genuine material fact dispute. Gray Tool Co. v. Humble Oil & Refining Co., 5 Cir., 186 F.2d 365; Colby v. Klune, 2 Cir., 178 F.2d 872, 873, 874; Palmer v. Chamberlin, 5 Cir., 191 F.2d 532, 540, 27 A.L.R.2d 416; American Insurance Co. v. Gentile Brothers, 5 Cir., 109 F.2d 732, 735; Chappell v. Goltsman, 5 Cir., 186 F.2d 215, 218; Whitaker v. Coleman, 5 Cir., 115 F.2d 305, 307; Kennedy v. Silas Mason Co., 334 U.S. 249, 256, 68 S.Ct. 1031, 92 L.Ed. 1347, 1350, 1351.

Until these factual controversies are properly determined, it is not possible to state, at this stage, whether the question of the availability or enforceability of arbitration under the Collective Bargaining Agreement, as such, will actually arise. Consequently, while forcibly debated by claim [7] and counterclaim here, we think it inappropriate to express any opinions in anticipation of the various possible holdings by the District Court. This reluctance seems especially warranted here since, in the wake of Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510, there is considerable pending litigation, including the question of enforcement of arbitration as a Section 301 controversy, 29 U.S.C.A. § 185, much of which may be crystalized by the time, if ever, the problem becomes real and present in this litigation.

Reversed and remanded for further and not inconsistent proceedings.

Reversed and remanded.

---

6. The various theories concerning the nature of the contract of employment, the relationship, if any, to the Collective Bargaining Agreement, the extent to which it is, or becomes a part of the employment contract is discussed at length in the opinions of the Third Circuit in Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 3 Cir., 210 F.2d 623, 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510.

7. The Unions' amended complaint in addition to alleging that the transportation was furnished pursuant to an implied agreement if not covered precisely by the Collective Bargaining Agreement, also sought, in the alternative, an order to compel the defendant to continue to furnish the transportation or to require it to submit the dispute to arbitration.