Jimmy **RICHARDSON**

v.

**PORT VINCENT BOAT WORKS, INC.**

Civ. A. No. 66–23.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

May 1, 1968.

Hugh Reynolds, Baton Rouge, La., A. J. Kling, Jr., Gonzales, La., for plaintiff.

Clint L. Pierson, Clint L. Pierson, Jr., Baton Rouge, La., for defendant.

WEST, Chief Judge:

Plaintiff, Jimmy Richardson, owned a 44 foot Chris Craft motor vessel which he kept moored under a floating boathouse on the Amite River at Port Vincent, Louisiana. The boathouse belonged to defendant, Port Vincent Boat Works, Inc., and the space under the boathouse was rented by plaintiff for $20 per month. On September 9, 1965, Hurricane Betsy struck the coast of Louisiana, and as it moved inland it did considerable damage to property in its path, including some damage to the boathouse in question. Plaintiff's boat remained in the damaged boathouse, without ever being removed therefrom, for some five months following the hurricane, or until February 12, 1966, when for some reason or other, it sank. Plaintiff brings this suit against the Port Vincent Boat Works, Inc., seeking to recover the loss he sustained as a result of the sinking of the boat, contending that the boat sank as a result of the negligence of the defendant.

It is plaintiff's contention that the boathouse was damaged by the hurricane in such a way as to cause a part of it to rest on the boat, thus preventing the boat from going up and down with the rise and fall of the river. It is his contention that as the river rose, water entered the boat, causing it to sink. He maintains that it was the duty of the defendant to look after and protect his boat while it was housed in defendant's boathouse, and that its failure to do so renders it liable for plaintiff's loss of his boat.

Defendant contends that when it rented the space to plaintiff it incurred no duty to look after the boat, and that it was in no way responsible for the loss of the vessel. Defendant further counterclaims for monies allegedly owed by plaintiff in connection with the lease of dock space and for other related services.

The case was tried to the Court without the intervention of a jury, and after the trial, the Court was furnished briefs by counsel for the respective parties. After due consideration of the evidence in this case, the Court concludes that defendant was in no way responsible for the loss of plaintiff's vessel, and that plaintiff is indeed indebted to defendant on its counterclaim as hereinafter set forth.

Plaintiff purchased the boat in question on July 20, 1963, and brought it to Port Vincent, on the Amite River, where he moored it in an open slip belonging to defendant. For this open space plaintiff paid defendant the sum of $10 per month. About six or seven months later a space protected by a floating boathouse became available and for the privilege of mooring his boat in this protected area, plaintiff paid defendant the sum of $20 per month. This boathouse was constructed of a wooden frame covered with sheets of tin and was floated on 47 barrels, 20 of which were on each side and 7 of which were across the closed or shore end of the house. The outboard or river

end was, of course, open and unobstructed to allow the boat to come into the boathouse. The boathouse was tied to two pilings, one located next to the bank and one located about 20 feet out from the bank. It was tied to the pilings in such a fashion as to allow it to go up and down with the rise and fall of the river. The boathouse was 20 feet wide with an overall length of 42 feet. It had a 3 foot walkway on the inside along each side and across the front, or inboard, end. Thus, when plaintiff's boat was in the boathouse as far as it could go, 39 feet of the boat would be under roof and 5 feet of the back, or stern, would protrude out from under the protection of the roof.

When Hurricane Betsy struck on September 9, 1965, some damage was done to the boathouse. Some of the barrels located at one corner of the boathouse on the inboard or shore end were knocked loose causing the house to list or drop down at that corner. Two 1″ x 4″ inside braces were broken and fell down across the boat, and some tin was torn off of the roof over a 10 foot area at the outboard or river end of the house. With the exception of slight damage to a small handrail on the stern of the boat caused when one of the 1″ x 4″ braces fell, no other damage was done to the boat. Mr. Horace Greer, president of defendant company, inspected the area, including the boathouse in question, the morning following the storm. Plaintiff was present during this inspection. This inspection revealed that the boat was not damaged and that it could easily be removed from the boathouse by simply cutting the two 1″ x 4″ braces that had fallen. Mr. Greer offered to assist in removing the boat, but plaintiff, feeling that the boat was in no danger, elected not to remove it from the boathouse. At the same time, Mr. Greer informed plaintiff that he did not intend to repair the boathouse and that the monthly rental was reduced to $10 per month, the rent charged for an open berth. He further informed plaintiff that if he, plaintiff, wanted to repair the boathouse at his own expense, he could do so and could then continue to use the

same space under the repaired boathouse for only $10 per month. Plaintiff indicated that he would very likely do that.

Mr. Greer did not see plaintiff again until after the boat sank on February 12, 1966, or some five months after the hurricane. Furthermore, plaintiff did not even go to look at his boat during that five month period. It was not until after he was informed that the boat for some reason or other had sunk that he went to see it some time after February 12, 1966. But during that five month period Mr. Greer did, on several occasions, attempt to contract plaintiff by telephone to advise him that rainwater was accumulating in his boat, but he was unable to contact him. What exactly caused the boat to sink is not entirely clear. But the most likely conclusion is that rainwater simply accumulated in the open transom of the boat which extended some five feet beyond the end of the boathouse until the stern went down to a point where more water could come in through the open exhaust, causing the boat to finally sink. Not only was the transom exposed to rain, but a ten foot section of the roofing tin was gone, thus exposing a rather large area of the boat to the rain. All of this was fully known to the plaintiff on the day after the hurricane when his rental was reduced to the price charged for an open slip. In spite of that he never once came by to check his boat or to cover it or bail it out. Finally it sank, and he now blames the defendant for the sinking. He argues that the defendant owed him the duty of checking his boat and of informing him of any apparent danger to it. Plaintiff concedes that this was not a legal duty, but says that it was a "moral obligation."

If Mr. Greer had any "moral obligation" at all, which is doubtful, to inspect plaintiff's boat, his obligation was certainly not as great as was the obligation of the plaintiff to inspect his own boat and to protect it from danger, especially when Mr. Greer had no greater knowledge of any potential danger to the boat than did the plaintiff himself.

At least five witnesses, all of whom rented slip space from defendant, testified to the fact that the rental price paid for slip space covered only the privilege of leaving their boats in the space provided. There was not a single witness who testified that the monthly rental paid to defendant included payment for any services of any kind. While Mr. Greer did, on occasions, perform services for boat owners, these services were performed on a contract basis and were never performed pursuant to the slip rental agreement. The defendant was not in any way in charge of plaintiff's boat, either legally or otherwise. It simply rented docking space to the plaintiff. Security National Insurance Co. v. Sequoyah Marina, Inc., 246 F.2d 830 (CA 10–1957). The monthly rental paid to defendant by plaintiff merely paid for the privilege of mooring his boat in the space provided. Michael Marino v. Vigilio Gagliano et al., d/b/a Marine Basin Marina, 1966 A.M.C. 2303. The rental arrangement in this case created only the relationship between defendant and plaintiff of lessor-lessee, and did not create a bailment situation. Thus the obligation to use reasonable care imposed by law upon a bailee is not involved. Niagra Fire Insurance Co. v. Dog River Boat Service, Inc., 187 F.Supp. 528 (S.D. Ala.–1960). As lessee of the space involved, plaintiff was, upon the partial destruction of the leased premises, entitled only to a reduction of the rental price or to a termination of the lease. La.R.C.C. Art. 2697. He chose to accept a reduction in the rental price from $20 per month to $10 per month. No further obligation rested upon defendant as lessor of the property. There being no evidence whatsoever to support the contention that defendant was guilty of any negligence causing or contributing to the cause of the loss of plaintiff's boat, and there being no evidence of any kind to show that defendant in any way violated its rental agreement with plaintiff, it necessarily follows that plaintiff's demands for damages resulting from the loss of his boat must be denied.

After denying liability for plaintiff's damages, defendant counterclaimed for the sum of $1,355.61. This figure represents monies allegedly due from plaintiff for past due rental payments for dock space for both the boat in question and for another boat owned by plaintiff and for various services rendered by defendant to plaintiff in connection with his boat. Plaintiff admits owing all of this money with the exception of one $60 item involved in raising the sunken boat. He admits that he owes defendant for raising the boat but contests the reasonableness of the $60 item. The evidence clearly supports the reasonableness of this item and thus defendant is entitled to recover from plaintiff, on its counterclaim, the total sum of $1,355.61, together with legal interest thereon from date of judgment until paid. Judgment will be entered accordingly.