JOSEPH BLANK, Appellant, *v.* MARINE BASIN COMPANY, INC., Respondent.

Second Department, June 8, 1917.

**Ships and shipping — distinction between liability of wharfinger for merchandise and where he rents wharfage privilege — when wharfinger not liable for theft of motor boat — evidence — custom of other wharfingers.**

The liability of a wharfinger *quoad* merchandise, a familiar kind of bailment, is quite different from the liability of a wharfinger charging " wharfage," which latter is like rent — a compensation for the use and occupation of a pier or bulkhead.

Thus, the owner of a marine dock or basin is not liable for the theft of a motor boat where the owner merely rented the privilege of mooring the craft in the basin and fastened it with a padlock of which he kept the key and where he was accustomed to take the boat from the basin whenever he desired without notifying the defendant of his departure or return, especially so where the complaint merely alleges a demand and refusal after the launch had been stolen, and does not plead any fault or negligence of the defendant.

In such action defendant's proof of usage in other yacht basins was competent on the issue of an implied contract.

APPEAL by the plaintiff, Joseph Blank, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Kings on the 12th day of January, 1917, dismissing the complaint on the merits upon

the decision of the court after a trial before the court, the jury having been waived.

*Walter J. Rose,* for the appellant.

*J. Hunter Lack,* for the respondent.

PUTNAM, J.:

Defendant conducted a marine dock or basin near Hubbard street, Gravesend Bay, Brooklyn, for the wharfage of motor boats and other navigable craft. It had also a warehouse with facilities for storage. The basin was oblong in shape, without gates, having an open entrance seaward seventy-five feet in width.

In July, 1912, plaintiff entered this marine basin and tied up his gasoline motor launch there, with two lines which led to mooring posts. The lines apparently were padlocked. He then went to the superintendent's office and arranged for paying four dollars and twenty cents a month summer and winter, that is, while in the water and on shore, with a charge of six dollars for "hauling in and out." Plaintiff kept the key. Coming to the basin occasionally in the course of the season, he took out the launch for short cruises. In the winter the launch was hauled out upon the land. The boat also was used in this way in the season of 1913 and 1914, also on the preceding Sunday before the boat was missing on August 26, 1914. Plaintiff showed a demand and refusal, but the complaint did not aver any negligence.

The court's findings that defendant's monthly charge was only for the privilege of mooring in the basin; that plaintiff never reported to the defendant either his departure or arrival, or otherwise notified defendant of the presence or absence of said launch in said basin, or requested defendant to take custody thereof, though expected to, are sustained by proof of the plaintiff's acts, and the general custom in such yacht basins. The court also found that prior to August twenty-seventh the boat disappeared and "has not since been seen or heard of."

The liability of a wharfinger *quoad* merchandise, which is a familiar kind of bailment, is quite different from the liability of a wharf owner charging "wharfage," which latter is like

rent, " being a compensation for the use and occupation of a pier or bulkhead." (*Hastorf* v. *Kelly*, 9 Daly, 403, 405.)

The undenied fact that plaintiff and his friends kept the keys of this launch, and went out and in, without reporting to defendant's employees, goes to negative any such possession by defendant, or *locatio custodiæ*, as might call on the defendant to account for the boat's disappearance. Defendant's proof of the usage in other yacht basins was competent on the issue of any implied contract. The finding that defendant was a bailee for hire was rather in the nature of a conclusion of law, which did not defeat the court's specific findings as to the terms of the arrangement for mooring in the basin.

The eighth finding of fact, however, should be changed so as to strike out the last five words, and substitute " as a vessel berthed therein, for which plaintiff was paying wharfage for such occupation."

The first conclusion of law should be stricken out, and a new conclusion of law inserted: " Defendant's charge of wharfage for plaintiff's mooring his launch in defendant's basin did not involve taking over or assuming the legal custody thereof while in such basin."

In the circumstances, defendant was not liable for this disappearance of the launch, especially under a complaint which only alleged a demand and refusal after the launch had been taken away, without pleading any fault or negligence. On the testimony, the court rightly exonerated the defendant from any negligence.

The judgment of dismissal should, therefore, be affirmed, with costs.

JENKS, P. J., STAPLETON, RICH and BLACKMAR, JJ., concurred.

Judgment affirmed, with costs. Order with amended findings to be settled on notice.