MARINE BASIN COMPANY, INC., Respondent, v. NORTHWESTERN FIRE AND MARINE INSURANCE COMPANY, Appellant.

(Argued April 7, 1931; decided May 12, 1931.)

*Jay Leo Rothschild* for appellant. The policy contemplates liability, only in the event that loss was sustained by the plaintiff, with respect to vessels in its charge, while being altered and /or repaired in the plaintiff's shipyard. (*Weinberg & Holman, Inc.,* v. *Providence Washington Ins. Co.,* 254 N. Y. 387.) The vessel in suit was never placed in charge of plaintiff. (*Hogan* v. *O'Brien,* 123 Misc. Rep. 865; *Armstrong* v. *Sisti,* 242 N. Y. 440; *State* v. *Clark,* 86 Me. 194; *Carron* v. *Boston & Albany R. R.,* 164 Mass. 523.) The legal liability insured against was that in connection with a vessel in the charge of plaintiff, being altered and /or repaired at the time of the accident. (*Atlantic Basin Iron Works* v. *American Ins. Co.,* 250 N. Y. 322; *Aldrich* v. *N. Y. Life Ins. Co.,* 235 N. Y. 214; *Bushey & Sons* v. *American Ins. Co.,* 237 N. Y. 24.)

*Cyrus S. Jullien* and *Frank S. Easby-Smith* for respondent. The policy covers the legal liability of plaintiff in connection with the sinking of the vessel. (*Van Bokkelen* v. *Travelers Ins. Co.,* 34 App. Div. 399; *Griffey* v. *New York Central Ins. Co.,* 100 N. Y. 417; *Liverpool & London & Globe Ins. Co.* v. *Kearney,* 180 U. S. 132; *Marcus* v. *U. S. Casualty Co.,* 249 N. Y. 21.) The

printed portion of the policy must be read in connection with the typewritten rider, the two together constituting the coverage under the policy. (*Hayward* v. *Liverpool & London Fire & Life Ins. Co.*, 2 Abb. Ct. App. Dec. 349; *Gunther* v. *Liverpool Ins. Co.*, 134 U. S. 110.) The policy was designed to cover the business of plaintiff, which was to repair ships and also to lay up ships. (*Underwood* v. *Globe Indemnity Co.*, 245 N. Y. 111; *Blank* v. *Marine Basin Co.*, 178 App. Div. 666; *Tarbox* v. *Tarbox*, 111 Me. 374.) The phrase " with privilege to lay up and make additions, alterations, and repairs, and to go in dry dock " has the same meaning as though it read " with privilege to lay up and /or lay up and make additions, alterations, and repairs, and /or to go in dry dock." (*Lamborn* v. *National Park Bank*, 212 App. Div. 25; *Weisman* v. *Continental Life Ins. Co.*, 267 S. W. Rep. 21; *Osborn* v. *Wilson & Co.*, 118 Misc. Rep. 379; 206 App. Div. 787; *Crown Embroidery Works* v. *Gordon*, 190 App. Div. 472.)

HUBBS, J. The plaintiff, prior to October 25, 1925, was engaged in the business of making alterations and repairs on boats and had a plant therefor. It also had docks and wharfs, not necessarily used in its work. In June, 1924, the owners of the boat *Faith* tied the boat to the wharf and inquired of the plaintiff what the charge would be for leaving it tied there and was told that it would be thirty-five dollars a month. The boat was tied and laid up in charge of a watchman employed by the owners of the boat. Many boats laid up and tied to the dock owned by the plaintiff. On October 25, 1925, the boat was sunk, owing to the negligence of the plaintiff in failing to furnish it with safe dockage. The plaintiff was obliged to pay the owners the damage suffered by reason of the sinking of the boat.

This action is to recover from the defendant insurance company the amount which the plaintiff was obliged to

pay to the owners of the boat and certain attorneys' fees which it paid. The question for determination is whether the policy issued by the defendant covered the loss in question. The trial court found that it did not. The Appellate Division made new findings, reversed, and gave judgment to the plaintiff, one justice dissenting. We are, therefore, required to examine the facts. (*York Mortgage Corp.* v. *Clotar Construction Corp.*, 254 N. Y. 128.)

The defendant filled out a printed form of policy commonly used in writing insurance on a vessel. It attempted to adapt the form to one covering a ship repairer's legal liability by attaching to the blank form a typewritten indorsement or rider, and by typewriting on the form after the statement of the amount insured, the words "Ship repairer's legal liability policy." The printed form reads: "Warranted confined to the use and navigation of the .......................... with privilege to lay up and make additions, alterations, and repairs, and to go in dry dock." It is apparent that the form was designed to be used by filling in the blank space the name of the waters to be navigated. If filled out as intended it might have read. "Warranted confined to the use and navigation of the Hudson River with privilege to lay up and make additions, alterations, and repairs, and to go in dry dock." Before the blank space referred to there was a blank space in which to fill in the name of the vessel to be insured. In that space was typewritten the words: "Ship repairer's legal liability policy." It is clear that the liability insured against was ship repairer's legal liability. In the blank space first referred to was attached a typewritten rider which reads: "To cover on any vessel or vessels that may be in charge of the Marine Basin Company especially in their floating dry dock and/or their Marine Railway situated at Brooklyn, N. Y., as below:

"Underwriters to cover only the Assured's legal liability for any and all losses (up to the amount of this

policy) which may occur on vessels injured or damaged while in the assured's charge being altered and/or repaired by the Marine Basin Company at their shipyard, whether in dry dock or on marine railway or not, but this policy is not liable for any losses which can be collected under other policies of assured, nor under policies held by owners of vessels unless there is recourse against assured.

"It is understood that in the event of loss under this policy the assured can recover from the Underwriters for work without first having recourse to the owners.

"To pay only the excess of $100 each claim.

"Warranted no claim for personal injury to or death of any person or persons under Workmen's Compensation acts or otherwise.

"(Attached to and forming part of policy No. 4387 of the Northwestern Fire & Marine Insurance Company.)"

Then follow the printed words of the policy: "With privilege to lay up and make additions, alterations, and repairs, and to go in dry dock." It should be noted that the words quoted are not part of a sentence started on the rider, but are part of a sentence following the blank space on the policy form.

The plaintiff contends that the language used in the policy means that the insurance was to cover boats "laid up" as well as boats laid up for the purpose of making repairs; also that the boat *Faith*, at the time it sank, was "in charge of" the plaintiff "being altered and/or repaired," within the meaning of the words of the policy. We have reached the conclusion that the plaintiff is wrong in both contentions.

Insurance policies "must be given a fair and reasonable interpretation to cover the risks which the parties had reason to anticipate, and had reason to believe would be met by the policy." (*Underwood* v. *Globe Indemnity Co.*, 245 N. Y. 111.) Guided by that principle, it must be held that a fair reading of the policy in question clearly shows that it was intended to cover "only"

boats " while in the assured's charge being altered and/or repaired." The boat *Faith* was not in charge of the plaintiff and was not being altered or repaired by it. Its owners had rented dockage space of the plaintiff at thirty-five dollars a month rental. The boat had been tied up in the space rented in charge of a watchman employed by the owners. From time to time from June, 1924, it had been taken out by the owners and used· and then brought back and tied up to the dock in charge of their own watchman. In order to permit a recovery we must hold that the policy covers all boats tied up at the plaintiff's dock, in space rented from the plaintiff for the purpose, even though not in charge of the plaintiff or being altered or repaired by it, or laid up in its charge for that purpose. The evidence does not permit such a holding.

The plaintiff's secretary and treasurer testified that the boat *Faith* was not in charge of the plaintiff and it was conceded that the watchman was employed by the owners of the boat. The payment of thirty-five dollars a month was for the use of a portion of the dock in the nature of rent and not a payment to the plaintiff for assuming charge of the boat. It was so decided in *Blank* v. *Marine Basin Co., Inc.* (178 App. Div. 666), which was an action against the plaintiff in the case at bar. We are in accord with that decision.

The words printed on the blank policy form, " with privilege to lay up and make additions, alterations, and repairs, and to go in dry dock," must be read in connection with their context which limits liability " only " to vessels " in charge of " the assured and being " altered and/or repaired, whether in dry dock or on marine railway or not." Thus read there is no ambiguity in the wording of the policy, and it is rendered fair and reasonable, and its words are given their natural meaning. (*Atlantic Basin Iron Works* v. *American Ins. Co.*, 250 N. Y. 322.)

We do not intend to decide that the policy only covered while alterations or repairs were actually being made on a boat. It may be that such a policy would cover a boat while laid up for the purpose of making alterations and repairs and in charge of an assured. That question is not involved in this case and is not passed upon.

The judgment of the Appellate Division should be reversed and that of the trial court affirmed, with costs in the Appellate Division and in this court.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Judgment accordingly.