221 A.2d 455.

FRANCIS J. GRABBERT *vs.* MARINA PARKS, INC.

JULY 6, 1966.

PRESENT: Roberts, C. J., Paolino, Powers and Joslin, JJ.

ROBERTS, C. J. This is an action in assumpsit brought to recover damages alleged to have resulted from the loss of a boat while in the custody and care of the defendant for the purpose of making repairs. The case was tried to a justice of the superior court sitting without a jury, who entered decision in favor of the plaintiff. The defendant is now prosecuting a bill of exceptions in this court.

It appears from the record that defendant corporation owns a marina located on the shore of Greenwich Bay at Apponaug and that Charles Dickerson, its president, and John Dickerson, its vice president, operate and manage the plant. It further appears that in June 1963 plaintiff purchased a small boat from defendant, which developed engine trouble on August 12, 1963. The plaintiff notified the Dickersons of this, and on the morning of August 13 John Dickerson went to a mooring at Nick's Dock at which plaintiff kept his boat and towed it to the marina. The plaintiff's boat remained docked there until the necessary engine repairs were completed on August 29.

On either the first or second of September plaintiff went to the marina to get his boat and found that the engine would not start. He notified one of the Dickersons as to the condition of the boat. It further appears that on the morning of September 3 one of the Dickersons made some adjustment to the ignition system of the engine, after which it became operable. At this point testimony was introduced by defendant that one of the Dickersons, recognizing a bystander as a friend of plaintiff, told him to tell plaintiff that his boat was ready. There is no evidence in the record that plaintiff was otherwise informed as to the readiness of the boat, which remained secured in the slip at the marina. Later that night one of the Dickersons saw plaintiff's boat in the slip, but it is not disputed that on the morning of September 4 the boat was not in its position in the slip and that Dickerson assumed plaintiff had taken it away.

On September 8 plaintiff went to defendant's marina, conferred with Charles Dickerson, and inquired as to the whereabouts of his boat. According to Dickerson, he told plaintiff that the boat was not at the marina and that plaintiff already had it. According to plaintiff, Charles Dickerson told him in substance that the boat must have been moved and that it would be delivered to plaintiff's mooring at Nick's Dock on September 13, a statement denied by Charles Dickerson. According to plaintiff, he did not see his boat at the marina on September 8.

On September 11, at the direction of Charles Dickerson, employees of defendant made a search around Warwick Cove for the boat and reported back that it was not at its regular mooring at Nick's Dock. Thereupon Charles Dickerson called the Warwick police department and asked for a check to be made to determine the whereabouts of the boat. It is not disputed that plaintiff called Charles Dickerson by phone on September 12 or 13 and was told that if he did not have his boat, he should immediately notify the police. The plaintiff thereupon called the police department of the city of Warwick, and it is not disputed that the police conducted a search for the vessel and that it has not been found.

The trial justice was here confronted with evidence, some of it in conflict, bearing on the establishment of the bailment of the boat, the nondelivery thereof to plaintiff after repairs had been completed, and the question of defendant's exercise of reasonable care to protect it from loss. In *Gettler* v. *Caffier*, 92 R. I. 19, 24, we said: "It is our well-settled rule that when parties submit a case involving matters of fact as well as law to a justice of the superior court sitting without a jury, his findings of fact on conflicting evidence are entitled to great weight and will not be disturbed by this court unless they are clearly wrong." The defendant, in attempting to meet its obligation to show that the decision of the trial justice was clearly wrong,

contends that the trial justice erred as a matter of law in a number of rulings made during the course of the trial.

The defendant contends that the trial justice misconceived the law governing its obligation as a bailee to establish its exercise of reasonable care to protect the boat against loss. In his decision the trial justice discloses the principle upon which he rested his conclusions. Quoting from *Starita* v. *Campbell,* 72 R. I. 405, 408, he said: "They are also agreed that if the property so bailed is lost the law presumes that the bailee was negligent, unless he shows that such loss was due to other causes consistent with due care on his part." The *Starita* case, as defendant notes, was one involving the bailment of a motor vehicle to the operator of a parking lot, but we are unable to perceive that it does not state correctly the principle of law we apply to such bailments.

The defendant, however, argues vigorously that the rule stated is not applicable in the instant case, the cause here being maritime in nature and within the federal admiralty jurisdiction. If we concede that the cause is maritime in nature, the action is in personam, and clearly the court below had jurisdiction to hear and determine the issues therein. *Rojas* v. *Robin,* 230 La. 1096. The defendant's claim of error then is based on its contention that the admiralty rule as to the establishment of a bailee's liability differs essentially from the rule stated in *Starita* v. *Campbell, supra.*

The defendant, in support of this contention, refers to *Commercial Molasses Corp.* v. *New York Tank Barge Corp.,* 314 U. S. 104, wherein it is stated that in an admiralty proceeding the burden of proof is on the bailor to establish that the loss was due to negligence but goes on to point out that in the circumstances of these cases the bailee, being in a better position than the bailor to know of the cause of the loss, is under law obligated to come forward with information available to him to show that he is not

liable by reason of failure to exercise due care. The court went on to say: "If the bailee fails, it leaves the trier of fact free to draw an inference unfavorable to him upon the bailor's establishing the unexplained failure to deliver the goods safely."

We do not perceive that the rule thus stated differs materially from that applied in the instant case by the trial justice. In each, the fundamental principle of law is the same and rests the burden of proof on the bailor. The bailor is required to adduce evidence sufficient to support a finding that the property was delivered to the bailee and has not been returned. It then becomes the obligation of the bailee to go forward with the burden of producing evidence for the purpose of establishing that in its control and custody of the bailed property it exercised reasonable care for its protection and security. In short, under either rule it is the obligation of the bailee to adduce testimony sufficient to rebut the presumption that the loss of the property bailed was a result of its failure to exercise reasonable care or, to put it otherwise, evidence sufficient to persuade the court against inferring therefrom that it had failed to exercise reasonable care to protect such property from loss.

It appears from an analysis of cases that the rule applied in admiralty causes generally is held to require the owner of the vessel to make a prima facie case of negligence by proving his delivery of the vessel to the bailee and a failure to return. It then becomes the obligation of the bailee to go forward with explanatory evidence sufficient to rebut the presumption. See Annot., 65 A.L.R.2d 1233. We do not perceive that the trial justice, in determining the liability of the bailee, did not apply this test thereto. In *Richmond Sand & Gravel Corp.* v. *Tidewater Const. Corp.*, 170 F.2d 392, cited by defendant, the court said: "There are, in general, two ways in which the bailee may rebut the presumption. He may show either how the dis-

aster in fact occurred and that this was in no way attributable to his negligence, or that he exercised the requisite care in all that he did with respect to the bailed article so that, regardless of how the accident in fact transpired, it could not have been caused by any negligence on his part." It is clear from the decision of the trial justice that he found on the state of the evidence here that defendant had neither established that the loss occurred in a manner in no way attributable to its negligence nor that the care it exercised was reasonable in all the circumstances.

The defendant presses several exceptions to rulings on the admission and exclusion of evidence during the course of the trial. Primarily, defendant argues that it was prejudicial error for the court to sustain objections to questions designed to establish custom and usage in the business of the bailee. An examination of the transcript fails to disclose the establishment of the existence of a custom in the business upon which the questions put to the witness could rest, In *Portuguese Beneficial Ass'n* v. *Xavier,* 59 R. I. 265, 268, the court said: "A custom which will enter into and affect the rights and liabilities of persons in their dealings with each other must be definite, uniform, well known and generally acquiesced in so that the party sought to be charged thereby may be presumed to have had knowledge of and acted in reference to it." Nothing in the record established that custom of this character exists in the bailee's business.

The defendant likewise contends that error inhered in the exclusion of evidence proffered by it to disclose defendant's prior history as to boat losses. If it be conceded that the questions here referred to could properly have been asked of the witness, an examination of the transcript suggests that evidence as to the nature and character of its precautions did get into evidence. We, therefore, are unable to find that the exclusion, if error, was prejudicial. We conclude then that all of defendant's exceptions to evidentiary rulings are without merit and must be overruled.

The defendant contends also that error inhered in the refusal of the trial justice to order an insurance carrier to comply with the provisions of the subpoena duces tecum that the court had ordered issued. Without extending this opinion by a discussion of the colloquy between the court and counsel as to the propriety of the subpoena in question, an examination of the transcript discloses clearly that the subpoena ordered the production of the complete files of the company relating to the contract of insurance covering plaintiff's boat. It is further disclosed therein that defendant desired to examine the files to ascertain whether any document was contained therein that might constitute a written record of a verbal report made to the insurer by one of its investigators. No such document was identified in the petition, the mandate thereof reading, in pertinent part: "* * * including any and all investigation reports concerning the loss of said boat, including the name or names of the persons conducting the investigation * * *." The defendant argued, in effect, that there was substantial reason to believe that a verbal report concerning the loss of plaintiff's boat had been made to the insurer and that a written record had been made of the contents of the verbal report.

In our opinion the trial justice did not err in refusing to order compliance with the subpoena duces tecum in the circumstances. In *Central Soya Co.* v. *Henderson,* 99 R. I. 388, 208 A.2d 110, we noted that these statutory grants of authority to subpoena records ought to set out the identity of such records with particularity so that the reasonableness of the order would become apparent. Quoting therein from *State* v. *Cooper,* 2 N. J. 540, we noted that: " '* * * the subject of a *subpoena duces tecum* must be specified with reasonable certainty, and there must be a substantial showing that they contain evidence relevant and material to the issue. If the specification is so broad and indefinite as to be oppressive and in excess of the demandant's neces-

sities, the subpoena is not sustainable.' " It is obvious in the instant case that the document that defendant desired to examine was not specified with particularity and, in fact, may not have existed. We do not agree that the subpoena duces tecum authorizes one's culling through the files of an insurer for the purpose of ascertaining whether such a report is contained therein. We find no error inhered in the court's refusal to order compliance with the subpoena duces tecum.

The defendant contends further that prejudicial error inhered in the denial by the trial justice of its motion to reopen the case in order to allow it to introduce evidence for the purpose of impeaching plaintiff's credibility. The record discloses that on the last day of trial plaintiff, under cross-examination, denied that he had ever engaged in an altercation with an employee of defendant or that he had had any angry words with this employee. The defendant contends, however, that during a court recess plaintiff told one of the Dickersons that in fact he had physically assaulted this employee on the occasion referred to under cross-examination. After the trial had closed Dickerson brought this conversation to the attention of counsel and executed an affidavit in which he set forth in substance plaintiff's admission that he had assaulted and quarreled with this employee of defendant.

Thereafter defendant moved to have the trial reopened so that it might put into evidence the affidavit for the purpose of impeaching the credibility of plaintiff. The court, after stating that the affidavit might well affect plaintiff's credibility on an immaterial issue, went on to deny the motion, saying: "The Court is more concerned with the credibility of the defendant in reference to the circumstances concerning the disappearance of the boat, than with the credibility of the plaintiff."

Motions to reopen are addressed to the sound judicial discretion of the trial court, and we see no abuse of such

discretion here. However, we are concerned here with the question whether the statement of the trial justice in denying the motion disclosed a misconception of the relationship between credibility and the burden of proof. We have, however, after considerable reflection come to the conclusion that the language he used does not reflect such a misconception but rather is an unfortunate and imprecise reference to the obligation of a defendant to go ahead with evidence sufficient to rebut the presumption of negligence raised by the plaintiff's prima facie case. In the circumstances it is our conclusion that no prejudicial error inhered in this ruling.

All of the defendant's exceptions briefed and argued are overruled, and the case is remitted to the superior court for entry of judgment on the decision.

*Jordan, Hanson & Curran, A. Lauriston Parks,* for plaintiff.

