Johnnie and Richard Coleman, Plaintiffs-Appellants, v. Chicago Thoroughbred Enterprises, Inc., a Foreign Corporation, Defendant-Appellee.

Gen. No. 52,621.

First District, First Division.

November 25, 1968.

Edwin M. Berman, Berman and Newman, of Chicago, for appellants.

John J. Bresingham, Hauseman & Hoolehan, of Chicago, for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is an action for damages for the loss of plaintiffs' automobile, which was stolen from defendant's parking

lot. Plaintiffs alleged that the automobile was stolen through the negligence and carelessness of defendant. At the close of plaintiffs' evidence, the trial court granted defendant's motion for a directed verdict.

On appeal, plaintiffs' contention is that the defendant owed plaintiffs a duty of reasonable care in the operation of its parking lot, and that the plaintiffs made out a prima facie case of negligence sufficient to require the trial court's denial of a directed verdict at the close of plaintiffs' case. Plaintiffs state that they do not contend that the defendant was an insurer of plaintiffs' car.

Plaintiffs' evidence showed that on August 27, 1965, plaintiff Richard Coleman drove plaintiffs' automobile to defendant's racetrack, where he attended the races. Plaintiff paid fifty cents to enter the defendant's general parking area and a second fifty cents to enter a "preferred parking lot," which was an area close to the racetrack. An attendant told him where to park his car, to lock it and carry the keys with him, which plaintiff did. Upon payment of the second fifty cents, a numbered ticket was placed under the windshield wiper to designate payment of the preferred parking fee, and its purpose was for "counting the house." The ticket placed upon the windshield contained no conditions of parking nor were any conditions transmitted orally or posted within the lot.

About one and one-half hours after the car was parked, plaintiff Richard Coleman returned to the parking lot and found that the automobile was missing. He immediately reported the loss to a parking lot attendant, and the two then searched the area for the car. After an unsuccessful search, plaintiff reported the loss to the track security officers. When the races were over a complete search was made of the parking area, and plaintiffs' automobile was not found, and it was never recovered.

Defendant's parking lot manager (called under section 60) testified there was a complete fence around Arling-

ton Park, with about ten gates. When the park gates were opened, each was manned with collectors and a guard, who stayed there until the collectors left after the fifth race. On August 27, there were about 5,500 parked cars, of which about 1,900 cars were in the preferred area, where there were two collectors and four men who directed people where to park. Many people walked through the preferred parking area to get to the racetrack, and nothing was done to keep them out. He had seen racetrack patrolmen walk around the parking areas. He instructed his men not to go into the cars and to watch to see there was no breaking into the cars.

Defendant's chief of security (called under section 60) testified that on August 27, 1965, he had eight plainclothes detectives and 23 or 24 guards. One uniformed guard was detailed at each gate where cars came in. There were no men patrolling the preferred parking area on August 27, 1965. In 1965, there were 25 cars reported stolen, of which 21 were located on the racetrack—the people had just misparked their cars. During the year of 1965, there were four cars stolen out of 500,000 parked cars at the racetrack, and about one car per week was reported stolen. He further testified that during the first two weeks of the race meeting in May 1965, he had two patrol vehicles in operation in the parking lots at all times. Each vehicle had two security officers in it, one using binoculars to scan the area looking for persons tampering with automobiles. No car thefts occurred during that time.

■ ■ Initially we agree with plaintiffs' contention that plaintiff Richard Coleman was a business invitee of the defendant and, as such, had the right to rely on the defendant using ordinary care in the operation of its parking lot; and that the same duty that applies to the person of a business invitee by implication applies to the property of the business invitee when lawfully on the owner's premises. Plaintiffs cite Geraghty v. Burr Oak

Lanes, Inc., 5 Ill2d 153, 125 NE2d 47 (1955), where the court said (p 157):

> "Toward an invitee the owner of premises must use reasonable care and caution to keep the premises reasonably safe for use by such invitee. To be upon premises by an implied invitation means that the person is there for a purpose connected with the business in which the owner of the premises is engaged.
> . . .
>
> "Under the facts and circumstances in this case, the defendant owed plaintiff, who was a business invitee, the duty to exercise ordinary care to have the parking lot in a reasonably safe condition to use in a manner consistent with the purpose of the invitation, or at least not to lead him into a dangerous trap, or expose him to an unreasonable risk, but to give him adequate and timely notice and warning of any latent or concealed perils, which were known to defendant but not to plaintiff. An owner in occupation of the premises violates his duty to an invitee when he negligently allows such conditions to exist on the property which imperil the safety of persons upon the premises."

And at page 158:

> "The law does not charge one with anticipating dangers and negligent conditions, but he may assume that others have done their duty to give proper warning of hidden dangers, . . . and apart from obvious dangers the plaintiff, as an invitee, could assume that the premises were reasonably safe for the use to which defendant had put them."

Plaintiffs argue that while the Geraghty case was concerned with personal injuries, there is no reason that the same law which would apply to the person would not apply

to his property, and in this case the defendant did not warn the plaintiff that automobiles had been stolen from its parking lot. Plaintiffs also argue that defendant's employees took control of the search for the car and carried it out in a negligent fashion, in that they waited three hours before initiating the general search and did not notify the guards at the main gate to watch for the car.

Considering our view of the matter of the relationship here and the relative rights and duties which flowed therefrom, a review of the cited authorities is unnecessary.

Both sides cite Wall v. Airport Parking Co. of Chicago, 88 Ill App2d 108, 232 NE2d 38 (1967), and we think it supplies the guidelines to be used here. There it is said (p 112):

> "The 'parking lot cases,' as they are commonly known, fall generally into three categories: (1) where an attendant simply collects a parking fee and designates a place to park, and the automobile operator retains control of the automobile, locking it or not as he wishes; (2) where an attendant collects a parking fee, assumes control of the automobile and parks it, moves it when the key is left at the request of the attendant and a ticket is issued to the automobile operator as a means of identifying the automobile upon redelivery; and (3) where the status of the parties falls in between the above two categories and is controlled by the nature of the circumstances within which the parties deal. The first class of cases generally is held to be a lease or a license, whereas the second category is generally held to be a bailment. See 131 ALR 1175, et seq.; Lewis v. Ebersole, 244 Ala 200, 12 So2d 543. Perhaps the case most extensively cited in relation to the third category is Osborn v. Cline, 263 NY 434, 189 NE 483, wherein the court stated that the circumstances

405

of each case must be considered in arriving at the nature of the relationship between a parking lot operator and an automobile operator who uses the lot for a fee."

■ We consider the relationship established by the evidence of plaintiffs to be a lease or a license, and it was incumbent upon plaintiffs to prove in what manner defendant parking lot operator was negligent, or that it had assumed the duty to safeguard the automobile.

In Williston on Contracts, 3rd edition, 1967, Vol 9, § 1065, it is said:

"One who merely lets automobile parking privileges is not a bailee of the parked car and, consequently, is under no duty to guard against loss by theft or fire since it is generally held that to be a bailee, the parking lot operator or his agent should have an independent and temporarily exclusive possession of the automobile with some degree of control over it."

Plaintiffs' evidence shows that plaintiff Richard Coleman had the custody of the car when he entered the grounds of the defendant and retained the control of it when he parked. An attendant told him to lock the car and carry the keys with him, which plaintiff did. He never surrendered the possession or control to the defendant or any of its agents, and the defendant never assumed any control whatever over it. There was no evidence to show an express or implied contract on the part of defendant to maintain a watch against the theft of the car or to show a bailor-bailee relationship between the parties. There was no proof here, nor do the circumstances indicate, that defendant's attendants were charged with the duty of looking after plaintiffs' car after they had directed plaintiff to a space in which to leave the car.

We are not persuaded that the conduct of defendant's employees, after being notified the car was stolen, operated to change the original "lease or a license" relationship, or showed that defendant was negligent in any manner with respect to the loss of plaintiffs' automobile. In Ney v. Yellow Cab Co., 2 Ill2d 74, 117 NE2d 74 (1954), the court, though holding that the intervention of a criminal act is in certain instances to be regarded as a foreseeable event which does not interrupt the relation of cause and effect between negligence and injury, stated (p 79):

> "Wrongful acts of independent third persons, not actually intended by the defendant, are not regarded by the law as natural consequences of his wrong, and he is not bound to anticipate the general probability of such acts, anymore than a particular act by this or that individual."

■■ In conclusion, we believe the evidence showed that defendant assumed no burden to safeguard plaintiffs' vehicle, and the subsequent alleged negligent conduct on the part of defendant did not violate or breach any duty owed to plaintiffs by the defendant.

For the reasons given, we hold that the trial court properly directed a verdict for the defendant at the close of plaintiffs' case. Therefore, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

BURMAN, P. J. and ADESKO, J., concur.