DONALD F. SEWALL *vs.* FITZ-INN AUTO PARKS, INC.

Suffolk.    May 13, 1975. — July 15, 1975.

Present: ROSE, KEVILLE, & ARMSTRONG, JJ.

*Bailment,* Motor vehicle.    *Negligence,* Bailee, Parking space.

In an action seeking recovery of the value of an automobile stolen from the defendant's parking lot, evidence that the plaintiff paid the parking attendant a flat fee, parked his automobile in the lot, locked

---

it and took the keys with him and that he had regularly parked in the lot for several years and had never seen an attendant on duty when he returned for his automobile in the evening required a finding that the defendant was not liable for damages resulting from the theft, inasmuch as the defendant neither exercised nor purported to exercise control over the plaintiff's automobile or over the departure of vehicles from the parking lot. [382-384]

CONTRACT AND TORT. Writ in the Superior Court dated January 19, 1971.

The action was tried before *Ford, J.*

*Edward M. Perry* for the plaintiff.

*Thomas E. Clinton* for the defendant.

ARMSTRONG, J.    The plaintiff seeks recovery of the value of his automobile, which was left by him on the defendant's parking lot early on the morning of April 15, 1970, and was gone when he returned for it early that evening, it having apparently been stolen by an unidentified third person. The declaration is in two counts, one based on a theory of breach of the defendant's contractual duty to safeguard the automobile and the other based on principles of ordinary negligence. At the conclusion of the evidence the trial judge directed verdicts for the defendant on both counts. The propriety of that action is the sole issue raised by the plaintiff's bill of exceptions.

The facts do not appear to be in dispute. The defendant's parking lot was approximately 100 by 200 feet in size. A chain link fence had been erected along its rear boundary, separating the lot from a facility of the Massachusetts Bay Transportation Authority. The normal entrance and exit to the lot were located at the front, but it was also possible to leave the lot from the sides, each of which bordered on a small street. Upon entering the lot on the morning of April 15, the plaintiff paid the attendant on duty a fee of twenty-five cents, a flat rate for which he was permitted to park all day or for a shorter period, as he chose. He parked his car in a space designated by the attendant, locked it and took the keys with him. The attendant remained on duty until 10:30 or 11:00 A.M. on April 15, after which time the lot was unattended, apparently pursuant to a practice fol-

lowed by the defendant. The plaintiff had never been expressly informed of that practice, but he had regularly parked in the lot for several years and had never seen an attendant when he returned for his car in the evening.

The case turns on whether those facts warranted a finding that the transaction between the parties constituted a bailment for hire of the plaintiff's automobile, rather than a mere letting of parking space. See *Sandler* v. *Commonwealth Station Co.* 307 Mass. 470, 471 (1940); Williston, Contracts, § 1065, pp. 1011-1012 (3d ed. 1967). The existence of a bailment is a prerequisite to the plaintiff's right to recover, either in contract or in tort, as the defendant would not otherwise be under any duty to safeguard the plaintiff's car against theft. *D. A. Schulte, Inc.* v. *North Terminal Garage Co.* 291 Mass. 251, 257 (1935). *Soutier* v. *Kaplow*, 330 Mass. 448, 450 (1953). We are of the opinion that no bailment has been shown and that the trial judge was correct in directing verdicts on both counts.

A bailment, by definition, arises only upon delivery of possession of the property sought to be bailed, and at least some degree of control over that property, to the putative bailee. Black's Law Dictionary, pp. 179-180, 515-516 (rev. 4th ed. 1968). Van Zile, Bailments and Carriers, §§ 3, 18, 19 (2d ed. 1908). See *Nash* v. *Lang*, 268 Mass. 407, 414 (1929) and *D. A. Schulte, Inc.* v. *North Terminal Garage Co., supra,* at 257-258. Once possession and control of an automobile have been transferred to the operator of a parking facility for a fee, the owner (in the absence of any warning or understanding to the contrary) is justified in concluding that the operator has assumed responsibility to safeguard the automobile, and the operator has a legally enforceable duty to exercise reasonable care in the fulfillment of that responsibility. *Sandler* v. *Commonwealth Station Co.* 307 Mass. at 472. But if there has been no such delivery of possession or control to the operator, nor any acceptance thereof by him, he cannot, without more, be regarded as having undertaken to protect the car and owes the owner no duty to do so. Compare *Mutual Coat Corp.* v. *Dorsyl Realty, Inc.* 346 Mass. 777, 778 (1964).

It has long been held that the surrender of the car keys to the parking facility attendant is a sufficient delivery of possession and control to create a bailment for hire, whether the keys are left at the attendant's request (*Sandler* v. *Commonwealth Station Co., supra,* at 471) or with his knowledge and acquiescence in the absence of such a request (see *Doherty* v. *Ernst,* 284 Mass. 341, 342-344 [1933]). The same result has recently been reached where the owner parked and locked his car, without surrendering the keys, in an enclosed parking facility whose sole means of egress was manned by an attendant responsible for stopping and checking each car leaving the facility. *Hale* v. *Massachusetts Parking Authy.* 358 Mass. 470 (1970). An examination of the records on appeal in the two parking facility cases decided by the Appeals Court and relied upon by the plaintiff reveals that the facility involved in those cases exercised (or gave the appearance of exercising) security measures as to departing vehicles similar to those in the *Hale* case. *American Auto Sales, Inc.* v. *Massachusetts Port Authy.* 2 Mass. App. Ct. 805 (1974). *Richard* v. *Massachusetts Port Authy.* 2 Mass. App. Ct. 826 (1974).

The three cases last cited have extended the concept of bailments for hire well beyond the point to which most (if not all) decisions of other jurisdictions have been prepared to go. See, e.g., *Ellish* v. *Airport Parking Co. of America, Inc.* 42 App. Div. 2d (N. Y.) 174 (1973), affd. 34 N. Y. 2d 882 (1974); *Taylor* v. *Philadelphia Parking Authy.* 398 Pa. 9 (1959). The plaintiff in effect is asking us to extend the principle applied in the *Hale* and subsequent cases. In those cases the garage, while not exercising the degree of control possible through possession of the keys, did exercise (or purport to exercise) control over the departure of vehicles from its facility. In the present case neither type of control was actually or apparently exercised or asserted by the defendant. The role of the attendant, so far as known to the plaintiff, was confined to collecting a uniform twenty-five cent fee from motorists as they entered the lot and directing them to parking spaces. The plaintiff knew that he could remove his car from the lot at any time without

interference by any employee of the defendant. Indeed, it should have been obvious to him, because of the open character of the lot and the absence of any attendant on all the evenings when he had removed his car, that any control exercised by the defendant over his car, and any correlative responsibility assumed with respect thereto, came to an end once he had paid the fee and parked the car. Compare *Miller* v. *Commonwealth Motor Hotels, Inc.* 358 Mass. 823 (1971).

*Exceptions overruled.*