The plaintiff has appealed from the court's granting of summary judgment to the defendant as to the first count of the plaintiff's complaint which alleges a breach of a bailment contract.
The facts do not appear to be in dispute. On May 11, 1979, the plaintiff went to the defendant's fronton to attend a jai alai performance. Upon arriving at the defendant's premises, the plaintiff noticed signs indicating that three kinds of parking facilities were available. These were labeled "VALET PARK $2"; "SELF PARK $1"; and "FREE PARKING AT YOUR OWN RISK." The plaintiff elected to use the "self park" facility and drove to a booth providing access to that area. He paid a one dollar entrance fee, received a ticket, parked his automobile in a space designated by the attendant, locked his automobile as directed and retained the key.
If he had selected "valet park," the plaintiff would have turned his vehicle over to an attendant, received a ticket, and upon presenting it when he returned, would have had his car delivered to him by an attendant. The "free parking" lot was located at a greater distance from the fronton.
When the plaintiff returned for his car, it was gone. The loss was duly reported to the authorities. Several days later the vehicle was recovered, but it was badly damaged. The plaintiff has sued to recover his damages from the defendant as the operator of the parking areas upon a complaint alleging a contract of bailment in the first count and negligence in the second count. Only the first count is before us.
The sole issue presented is whether there existed a bailment contract between the parties. The Supreme Court considered the issue of the creation of a *Page 622 
bailment contract in a parking lot situation in Malone v. Santora, 135 Conn. 286, 64 A.2d 51 (1949). In that case, the court stated that there are two types of parking lot situations. In the first type, the attendant merely collects the fee and designates the area in which to park. The driver himself does the parking and retains complete control over the car, locking it or not as he wishes. The second type involves those lots, usually enclosed, where the attendant takes complete charge of the car at the entrance, parks it, retains the keys and moves the car about as necessary, giving the driver a check or ticket, upon presentation of which the car is delivered to him. Situations of the second type have usually been held to give rise to liability on the ground that the transaction is a bailment. Liability has been denied in cases of the first type, the courts holding that the lack of the essential element of possession in the lot operator renders the relationship one of a license or of a privilege to park rather than a bailment. Id., 290.
"`The rule in such cases is founded on the nature of a bailment, which involves a delivery of the thing bailed into the possession of the bailee, under a contract to return it to the owner according to the terms of the agreement.'" Seedman v. Jaffer, 104 Conn. 222, 226, 132 A. 414 (1926). The determination of whether a car owner merely hires a place to put his car or has turned its possession over to the care and custody of the lot operator depends on the place, the conditions and the nature of the transaction. The court in Malone, supra, in concluding that a bailment contract had been created, found the following facts to be significant: "The lot was inclosed; the defendant's attendants were present to attend to cars brought in to be parked; the plaintiff paid the parking charge to the attendant who gave him his claim ticket; the plaintiff left the switch key in the car at the request of the attendant who then took the car and *Page 623 
parked it; [and] no particular space for placing the car was either mentioned or contemplated." Id., 290-91.
The situation in the present case corresponds to the first type of parking spelled out in Malone, supra. In contrast to the facts described in Malone, the plaintiff parked the car himself, locking it and retaining the keys; the attendant was not on duty at all times; and the ticket the plaintiff received was not a multiple part ticket suitable for identification purposes. In situations of this kind the majority of jurisdictions that have considered this issue hold that no bailment is created. See Coleman v. Chicago Thoroughbred Enterprises, Inc., 102 Ill. App.2d 400,243 N.E.2d 333 (1968); Sewall v. Fitz-Inn Auto Parks, Inc., 3 Mass. App. 380,330 N.E.2d 853 (1975); Ellish v. Airport Parking Co.,42 App. Div. 2d 174, 345 N.Y.S.2d 650 (1973); Sparrow v. Airport Parking Co. of America, 221 Pa. Super. 32,289 A.2d 87 (1972).
The trial court rendered summary judgment for the defendant upon the count of the complaint concerning the creation of a bailment contract. Summary judgment is to be rendered where the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book 384. In order to oppose successfully a motion for summary judgment, the opposing party must recite facts which contradict those offered by the moving party. Dorazio v. M. B. Foster Electric Co., 157 Conn. 226, 229, 253 A.2d 22 (1968). The plaintiff's affidavit failed to meet this requirement. Since an analysis of the facts presented shows that there was an insufficient transfer of possession and control of the plaintiff's car to the parking lot *Page 624 
operator to create a bailment, the trial court was correct in granting summary judgment as to the first count.
 There is no error.
In this opinion SHEA and BIELUCH, Js., concurred.