SS AMAZONIA, her engines, etc. Companhia De Navegacao Maritima Netumar, et al., Defendant-Appellant and Third-Party Plaintiff,

v.

NEW JERSEY EXPORT MARINE CARPENTERS, INC., Third-Party Defendant-Appellee.

COMPANHIA DE NAVEGACAO MARITIMA NETUMAR, Plaintiff-Appellant,

v.

UNITED TERMINALS, INC., Defendant,

New Jersey Export Marine Carpenters, Inc., Defendant-Appellee.

No. 766, Docket 76–7463.

United States Court of Appeals, Second Circuit.

Argued April 7, 1977.

Decided Oct. 14, 1977.

Cichanowicz & Callan, New York City, for appellant.

McHugh, Heckman, Smith & Leonard, New York City, for appellee.

Before OAKES, Circuit Judge, and WY-ZANSKI* and HOLDEN,** District Judges.

HOLDEN, District Judge:

On January 18, 1971, Netumar's Brazilian flag vessel M/V Amazonia sailed from New York for Brazil. Included in her cargo were two 17-ton Terex tractors. The trac-tors were loaded by United Terminals, Inc., and secured by New Jersey Export Marine Carpenters, Inc. The tractors were stowed athwartships in the Amazonia's No. 2 'tween deck, with the buckets removed, exposing the trunnion arms of the tractor's lifts to the shell of the vessel below the water line. For 24 hours the passage was uneventful, but late on the 19th the weath-er began to build and the vessel rolled and pitched continuously through the 20th. At some point the starboardmost tractor broke its lashings and the exposed arms of the device punctured the shell plating on the starboard side just above the 'tween deck level. The last watch of the 20th discover-ed flooding in the No. 2 hold where the Terexes were stowed. Listing heavily to starboard, the Amazonia made her port of refuge, Bermuda, on January 21.

The cargo plaintiffs, *Footner et al.*, sued the vessel and Netumar; Netumar filed a third-party claim for indemnity against United and Export, the stevedore and ma-rine carpentry contractor. After the cargo plaintiffs amended their complaint to assert a cause of action against the third-party defendants, Netumar settled the cargo claims and continued the suit against Unit-ed and Export. In a second action Netu-mar sued United and Export directly for negligence and breach of warranty. The two actions were consolidated and tried be-fore Judge Owen on the sole issue of liabili-ty. At the close of the plaintiffs' case Judge Owen dismissed the action against United and the stevedore is not a party to this appeal.

In its order of July 22, 1976, the trial court found against the vessel and her own-er on their claims against Export. In its accompanying opinion the court determined that the tractors had been properly lashed with suitable materials and that the suffi-ciency of this lashing was confirmed by a National Cargo Bureau certificate. The court further determined that the crew of

* Senior Judge of the United States District Court for the District of Massachusetts, sitting by designation.

** Chief Judge of the United States District Court for the District of Vermont, sitting by designa-tion.

the Amazonia had failed to adjust the tautness of the lashings after a point eighteen hours out of New York, despite the heavy weather, and that either a fire on board or other problems in management of the vessel caused the crew to overlook the pounding of the tractor arms against the hull. Judge Owen concluded that the plaintiffs had failed to establish the cause of the tractor's release and resulting damage, and specifically held that the cargo had been properly lashed.

The Amazonia and Netumar appeal, challenging the trial court's findings and conclusions as insufficient under Fed.R.Civ.P. 52(a). As to the merits, the plaintiffs contend that the district court incorrectly applied negligence concepts to a relationship governed by rules of warranty arising from the contract between the vessel and her marine service contractors.

The appellants further challenge the trial court's findings on the weight attached to the National Cargo Bureau certificate and its disregard of answers to interrogatories by Export's president to the effect that the tractors were lashed horizontally to pad-eyes on the ship's sides instead of downward to deck-level fittings. The appellants charge that the court speculated that rolls of newsprint stowed in the No. 2 'tween deck could have dislodged and caused the tractor to break its lashings. Error is assigned to court's emphasis on the weather and the crew's performance as substantial factors in the misadventure.

■ The findings and the conclusions derived from the facts found are included in the short opinion filed by the court. The judgment of the trial court, sitting without a jury in admiralty, will not be set aside on appeal unless it is clearly erroneous. Fed. R.Civ.P. 52(a); *cf. McAllister v. United States*, 348 U.S. 19, 24, 75 S.Ct. 6, 99 L.Ed. 20 (1954). The court's opinion, in form and substance, meets the demands of Rule 52 and we affirm.

The court resolved the issue of liability charged against the appellee, New Jersey Export, by its factual determination that the Terexes were properly lashed. In the presence of this clear and definite finding Judge Owen found it to be " . . . impossible to tell why the Terex broke loose." After concluding that New Jersey Export was without fault in securing the vehicles and suggesting possible alternative explanations for the rupture which might be assigned to shortages in the performance of the Amazonia's crew or to improper stowage of other cargo, Judge Owen concluded that "the Amazonia has not met its burden of proving the cause of the Terexes getting loose and one of them puncturing the hull."

■ It must be recognized—as both parties to this appeal explicitly do, that a shipowner may receive indemnity from a marine contractor for breach of implied warranty of workmanlike service, albeit that such performance was done without negligence. *Italia Societa v. Oregon Stevedoring Co.*, 376 U.S. 315, 324, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964); *Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp.*, 350 U.S. 124, 133, 76 S.Ct. 232, 100 L.Ed. 133 (1956). The appellee's warranty of workmanlike service is an incident of its undertaking with the shipowner and "is comparable to a manufacturer's warranty of the soundness of its manufactured product." *Id.* 133–134, 76 S.Ct. 237; *Booth Steamship Co. Ltd. v. Meier & Oelhaf & Co.*, 262 F.2d 310, 313 (2d Cir. 1958). Thus the plaintiff was called upon to prove that Export's lashing and securing of the tractors were performed in an unworkmanlike manner and the breach of its warranty in this respect caused the damage claimed.

■ The question of whether the tractors were properly secured was the subject of sharp conflict in the evidence. The trial court resolved the issue by finding Export had properly performed. The appellants challenge this determination by urging that the court ignored sworn admissions by the president of Export in 1973 in response to interrogatories to the effect that the tractors were lashed horizontally to pad-eyes on the skin of the vessel and were not chocked under the axles. The answers given by Export's president Devaney are abbreviated

without explanation or detail. In any event, they do not bear the connotation of faulty lashing urged by the appellants. If the responses permit the inference that the tractors were lashed to the shell of the vessel, instead of the deck, the evidence was not given substantial weight against other proof presented by the appellee. Alphonse D'Ambrosio, the carpenter foreman on the job for Export, but not in its employ at the time of trial, testified that the tractors were cribbed and blocked with legs, braces and shorings, that they were lashed to the deck as well as the sides, and that the axles were properly chocked. Another expert witness, Captain Wheeler, testified that tractors stowed as D'Ambrosio had described and displayed according to a model would have been properly secured. The weight to be given to the answers to appellant's interrogatories and that of the experts was exclusively the province for the trial court and not subject to revision on appeal.

The appellants assign error to the district court's reliance on the National Cargo Bureau certificate. Contrary to the appellants' contention, the surveyor's certificate that the tractors were properly lashed, was not the only evidence supportive of the ultimate finding of Export's workmanlike performance. The testimony of appellee's lashing foreman, D'Ambrosio, and Export's expert witness, Captain Wheeler, affords substantial support to the determination that the Terex tractors were properly secured and lashed.[1]

The appellants argue that National Cargo Bureau certificates are of little or no weight, citing *F. W. Pirie Co. v. SS Mormactrade*, 1970 AMC 1327 (S.D.N.Y. 1970), and *Waterman SS Corp. v. United States S.R. & M. Co.*, 155 F.2d 687 (5th Cir. 1946). We recognize that Cargo certificates are not controlling on the issue of seaworthiness in cases under the Carriage of Goods by Sea Act, 46 U.S.C. § 1304(2), and the Harter Act, 46 U.S.C. § 192. *E. g., Waterman SS Corp. v. United States S.R. & M. Co., supra* (COGSA); *Bank Line v. Porter*, 25 F.2d 843 (4th Cir. 1928), *cert. denied*, 278 U.S. 623, 49 S.Ct. 25, 73 L.Ed. 544; *The Vestris*, 60 F.2d 273 (S.D.N.Y. 1932) (Harter Act). While this action by the vessel and her owners against the marine service contractor is not governed by those statutes, we are inclined to accept the appellant's argument that the Cargo Bureau certificate could not conclusively free the contractor from liability to the vessel or her owners for cargo losses. Be that as it may, as noted above, the district court did not impose determinant reliance on the certificate, but rather as cumulative support of other evidence in the case that Export's lashing work met the standards of the industry and was approved by responsible officers of the Amazonia's crew.[2]

---

1. Although the certificate for below deck cargo refers only to "unboxed tractors," no evidence was introduced to show whether the Cargo Bureau representative, a Mr. DeCastro, had seen only other unboxed tractors which were stored in the No. 2 lower deck. In the absence of any such proof on this point, the trial court was justified in concluding that the Cargo Bureau surveyor had actually checked the unboxed Terex tractors in the No. 2 'tween deck, particularly since the surveyor's certificate cautiously records that the contents of the contained cargo were not visible to him. The appellants also point out that the surveyor's notes indicate his attendance only at 16:00 on January 18, after the Terexes had been stowed and other containers had been stored above deck on the closed hatch covers. The appellants suggest that the surveyor therefore would have been unable to view the contents of the holds. As the trial judge noted, however, the ship's log discloses that eighteen hours out of New York the crew was able to pass through the lower holds to check the lashings, presumably through the same interior access by which the Cargo Bureau surveyor would have reached the cargo upon his inspection. Moreover, Vice President and Secretary of The National Cargo Bureau, Jerome Scully, testified, in response to a question by the court, that the Bureau's practice was to survey the entirety of the cargo included in a below-deck certificate (Appendix 200). This state of the evidence permitted the trial judge to infer that the surveyor had been able to inspect, and did actually approve the lashings of the several unboxed tractors stored in the No. 2 'tween deck and lower hold. It also bears on the point that the plaintiffs failed to establish its claim that the surveyor had not inspected any or all of the tractors.

2. Appendix pp. 78–79, 189, 210.
   Unlike Harter Act and COGSA cases where the vessel has the burden of proving due dili-

■ The appellants refer to the conjectural statement in the court's opinion to illustrate the deficiency of proof in the case to the effect that "rolls of newsprint could have gotten loose" and, in turn, dislodged the tractors. The speculation served no useful purpose except as an explanation of the court's inability to find the actual cause for the tractor's release. In any event, its inclusion in the court's findings was not harmful error.[3]

■ Lastly, the appellants contend that the trial court's decision of the case turned on application of the law of negligence instead of the more compelling demands of principles of warranty.[4] The shipowner presses the point that the true test is simply to determine which party was best able to prevent the casualty, citing *Italia Societa v. Oregon Stevedoring Co.,* supra, 376 U.S. at 324, 84 S.Ct. 748. It is entirely clear, however, that this concept, expressed by Mr. Justice White in *Italia Societa,* applies only where causation is established. The Court's opinion goes on to state—

Where the shipowner is liable to the employees of the stevedore company as well as its employees for failing to supply

a vessel and equipment free of defects, regardless of negligence, we do not think it unfair or unwise to require the stevedore to indemnify the shipowner for *damages sustained as a result of injury-producing defective equipment* supplied by a stevedore in furtherance of its contractual obligations. (Emphasis supplied—citation omitted.)

The total record affords no basis to reject the trial court's conclusion that the plaintiff failed to meet its burden of proving defective performance and causation.

■ The appellants correctly argue that a shipowner's negligence in failing to discover a dangerous condition will not bar recovery in indemnity for breach of the marine service contractor's warranty of workmanlike performance. *Weyerhaeuser S. S. Co. v. Nacirema Operating Co., supra,* 355 U.S. at 568, 78 S.Ct. 438. Although foundations of liability on principles of negligence are inapplicable, causation remains an essential ingredient of a claim for indemnity pursued on concepts of strict liability. A causal connection must be established between the claimed breach and the harm suffered.[5] *E. g., American S. & R.*

---

gence in providing a seaworthy vessel as a defense to an action by cargo owners, here the certificate was offered to meet opposing proof by the vessel with whom the burden of proof resided.

3. The appellants urge that Export had relashed this newsprint and so would be responsible for this possible cause of the mishap in any event. The fifteen tons of newsprint which were restowed from the No. 1 to the No. 2 hold at New York, however, were stowed on the square of the hatch aft of 16 tons of heavy lift machinery and the bulk of the newsprint, 250 tons, which had been loaded at St. John's and not disturbed at New York. The only evidence in the case regarding the possibility of loose rolls of newsprint concerned those rolls stowed nearest the tractors, the forward face of the 250 ton portion of the cargo which almost entirely surrounded the 15 tons Export had restowed on the square of the hatch (R. 147–48, 234–35). In any event, the trial court made no finding to this effect, but offered this hypothesis only to illustrate the loose ends which the plaintiffs' failure of proof left unresolved in the trial. The evidentiary dispute regarding the loose rolls of newsprint is not significant to this review.

4. The inapplicability of the law of negligence in this area is well settled, as the trial court was surely aware. *Italia Societa v. Oregon Stevedoring Co., supra,* 376 U.S. at 323, 84 S.Ct. 748; *Weyerhaeuser S. S. Co. v. Nacirema Operating Co.,* 355 U.S. 563, 569, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958); *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.,* 350 U.S. at 134, 76 S.Ct. 232 (1956); *Booth S. S. Co. v. Meier & Oelhaf Co.,* 262 F.2d 310, 314 (2d Cir. 1958). The contractor's warranty does not extend to every peril of the sea. The duty "to supply reasonably safe equipment may be satisfied with less than absolutely perfect equipment," *Italia Societa v. Oregon Stevedoring Co., supra,* 376 U.S. at 321, 84 S.Ct. at 752. The trial court's finding that "the tractors were properly lashed with suitable materials" satisfies us that the district court applied the standard appropriate to the law of warranty in this case.

5. The appellants point to evidence that the wire rope used by Export to lash the tractors was too thin and that the turnbuckles used were inadequate. Leaving aside the evidentiary dispute on these points, which the trial court implicitly decided against the plaintiff, the court was, in any event, justified in concluding that a

*Co. v. S. S. Irish Spruce,* 548 F.2d 56 (2d Cir. 1977); *Garner v. Cities Service Tankers Corp.,* 456 F.2d 476 (5th Cir. 1972); *Lekas & Drivas, Inc. v. Goulandris,* 306 F.2d 426 (2d Cir. 1962); *The Chester Valley,* 110 F.2d 592 (5th Cir. 1940).

The judgment of the district court is affirmed.

proper causal relationship had not been proven. There was evidence that the vessel had been improperly loaded, making her a stiff ship with a tendency to "snap" at the end of each roll; that the crew failed to adjust the turnbuckles as the wire ropes stretched, as normally occurs, thereby aggravating the whip stresses placed on the lashings.