524 F.Supp. 34 (1981)
The CONTINENTAL INSURANCE COMPANY, Plaintiff,
v.
WASHEON CORPORATION, d/b/a Yacht Club of St. Louis, Defendant.
No. 80-777A(4).
United States District Court, E. D. Missouri, E. D.
May 28, 1981.
*35 James W. Herron, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for plaintiff.
Edward D. Weakley, Lashly, Caruthers, Thies, Rava & Hamel, St. Louis, Mo., for defendant.

MEMORANDUM
HUNGATE, District Judge.
This matter is before the Court for a decision on the merits following a two-day bench trial commencing on April 14, 1981. Plaintiff brings this admiralty action as the subrogee of its insured, seeking to recover sums paid pursuant to an insurance policy for fire damage sustained to the hull of the yacht, "Antiqua."
Having considered the pleadings, trial testimony, exhibits, stipulations of the parties, briefs, and applicable law, and being otherwise fully advised in the premises, the Court hereby makes and enters the following findings of fact and conclusions of law.

Findings of Fact
1. Plaintiff, Continental Insurance Company, is a corporation duly organized and existing under law and is authorized to conduct insurance business.
2. Defendant, Washeon Corporation, is a duly organized corporation doing business as the Yacht Club of St. Louis ["Yacht Club"]. Defendant owns and operates the Yacht Club, and rents dock space on the Mississippi River in St. Charles County, Missouri.
3. On February 28, 1979, Robert Rooney, owner of the motor vessel Antiqua, a forty-two-foot Trojan cruiser, entered into an agreement with defendant whereby Rooney leased a dock space from the Yacht Club for the period from April 1, 1979, through March 31, 1980, for the sum of $1,826.00. Rooney had previously entered into an identical agreement with defendant for the period from June 1, 1978, through March 31, 1979.
The agreement states in pertinent part:
1. Licensee [Rooney] hereby agrees as follows:
A. That he has inspected the boat dock and appurtenances and has found the same free of defects and that he will continually inspect same and that he will make known any defects he may find therein and warn all persons of such defects.
B. That he assumes all risk and liability for ... property damage or for loss of ... property resulting from, or in any way connected with, the use of the boat dock, dock space and waters, the harbor facilities and land and appurtenances adjacent to said boat dock and dock space covered by this license ... and agrees to fully indemnify Licensor [Yacht Club] with respect thereto, including any legal expenses of Licensor.
. . . . .
D. That he will keep the boat fully insured with complete marine insurance, including hull coverage, indemnity and/or liability insurance. ... [T]he policy reflecting said hull coverage shall contain a waiver of subrogation clause, Licensee hereby waiving any rights to recover against Licensor for any damage to or destruction of Licensee's property ... resulting from any cause originating or occurring during the term of this License whether due to the negligence of Licensor or otherwise.
. . . . .

*36 5. ... Licensor assumes no responsibility for the safety of any boat ... or other property of Licensee ... and Licensor shall not be liable for any such injury, damage or loss, total or partial, from any cause whatsoever, including, without limitation, fire, theft, flood, vandalism ... or any other cause.
4. The only limitation on Rooney's use of the boat contained in the lease agreement provided that Rooney use the boat for pleasure only. In all other respects, Rooney had an unrestricted right and access to the use of the boat. Defendant had no possessory interest in the boat.
5. Plaintiff issued a hull insurance policy to Rooney for the yacht Antiqua. Although a waiver of subrogation was required by the lease agreement between Rooney and defendant, plaintiff had no knowledge of the waiver of subrogation provision in the lease agreement. Accordingly, the hull insurance policy issued by plaintiff to Rooney did not contain a waiver of subrogation clause. The insurance policy was in effect on January 5th and 6th of 1980.
6. Rooney's yacht was destroyed by a fire at the Yacht Club on January 5th and 6th of 1980. Plaintiff paid Rooney the sum of $88,900.00 on March 4, 1980, pursuant to the hull insurance policy.
7. Plaintiff asserts that defendant's employee improperly spliced the wires connecting the electrical agitator to the power line on the dock. Plaintiff contends that this improper splice caused the fire that destroyed the Antiqua.
Plaintiff further asserts that Rooney observed the improper splice being made and complained to both the employee who performed the splice, as well as to the harbormaster, but that the splice was not corrected.
Plaintiff now argues that defendant's failure to correct the defective splice after receiving notification thereof in accordance with paragraph 1A of the lease agreement constitutes a breach of defendant's inherent contractual duty to repair defects of which it has been notified.
By reason of the foregoing, plaintiff argues that the negligence of defendant in performing the splice, and defendant's failure to remedy the defect after receiving notification thereof, estop defendant from asserting the indemnification and exculpatory provisions of the lease agreement.
8. The evidence adduced as to the manner in which the splice was made, whether a complaint was lodged with the harbormaster or the employee making the splice, and the cause of the fire, was conflicting and inconclusive.
In light of the conflicting evidence presented, the Court concludes that plaintiff failed to establish by a preponderance of the evidence that an improper splice was made, that complaints were lodged regarding the splice, or that the fire was caused by the negligence of the defendant. Therefore, judgment will be entered against plaintiff and in favor of defendant.

Conclusions of Law
1. This Court has jurisdiction over this cause pursuant to 28 U.S.C. § 1333.
2. Having found that plaintiff had no knowledge of plaintiff's insured's waiver of subrogation, the Court concludes that plaintiff's action as subrogee is not barred by the agreement between defendant and plaintiff's insured. See Alamo Chemical Transportation Co. v. M/V Overseas Valdes, 469 F.Supp. 203, 212 (E.D.La.1979), holding that, notwithstanding a waiver of subrogation agreement between a cargo carrier and the purchaser, absent a waiver of subrogation between the cargo insurer and purchaser, the insurer could pursue the purchaser's cargo claim against the carrier. See also Seamless Floors by Ford, Inc. v. Value Line Homes, Inc., 438 S.W.2d 598, 601-02 (Tex. App.1969); Farm Bureau Mutual Ins. Co. v. Anderson, 360 S.W.2d 314 (Mo.App.1962).
3. As subrogee to plaintiff's insured's interest, plaintiff may assert the same rights and is subject to the same defenses as plaintiff's insured. United States v. United Serv. Auto. Ass'n, 238 F.2d *37 364, 366 (8th Cir. 1956); Holt v. Myers, 494 S.W.2d 430, 444 (Mo.App.1973).
4. Plaintiff asserts that defendant was a bailee for Rooney's boat, and, therefore, an inference of negligence arises from damage to the allegedly bailed property while in the purported bailee's possession. See MidAmerica Transp. Co. v. St. Louis Barge Fleeting Service, Inc., 229 F.Supp. 409, 411 (E.D. Mo.1964), aff'd, 348 F.2d 920 (8th Cir. 1965).
To establish a bailment, there must be a delivery and acceptance of the bailed property for a specific purpose in accordance with an express or implied contract between the bailor and bailee. The delivery to the bailee must be complete. For the period of the bailment, the bailee must have an exclusive right to possession of the bailed property, even as against the owner. Ratteree v. Gen. Motors Corp., 460 S.W.2d 309 (Mo.App.1970); Weinberg v. Wayco Petroleum Co., 402 S.W.2d 597, 599 (Mo.App. 1966).
The Court concludes that no such complete delivery and acceptance were shown. Rooney had unrestricted access to the boat. Defendant did not have a possessory interest in the boat. The evidence established a lessor/lessee relationship rather than a bailment situation. Richardson v. Port Vincent Boat Works, Inc., 284 F.Supp. 353, 356 (E.D.La.1968).
5. Plaintiff further asserts that defendant's negligence and breach of the agreement between plaintiff's insured and defendant estops defendant from asserting the exculpatory and indemnification provisions of the agreement. See S. G. Adams Printing and Stationery Co. v. Central Hardware Co., 572 S.W.2d 625, 629 (Mo. App.1978), holding that a party to a contract cannot claim its benefits where he is the first to violate it.
Having found the evidence to be insufficient to establish defendant's negligence or breach of the lease agreement, the Court concludes that plaintiff is subject to any valid exculpatory or indemnification provisions of the lease agreement.
6. Construing the lease agreement in its entirety, the Court concludes that the indemnification and exculpatory provisions set forth the intention of the parties thereto to indemnify defendant against defendant's own negligence in sufficiently clear and unmistakable terms such that these provisions should be given effect. Brown v. Seaboard Coast Line R. R. Co., 554 F.2d 1299, 1302 (5th Cir.), cert. denied, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977); Lanasse v. Travelers Insurance Co., 450 F.2d 580 (5th Cir. 1971), cert. denied, 406 U.S. 921, 92 S.Ct. 1779, 32 L.Ed.2d 120 (1972).
The Court having found the evidence to be insufficient to establish defendant's negligence, or defendant's breach of the lease agreement such that defendant is estopped from asserting the exculpatory provisions of that agreement, and having concluded that the exculpatory and indemnification provisions of the lease agreement are valid and enforceable, judgment will be entered against plaintiff and in favor of defendant, each party to bear its own costs.