**Edward SNYDER, Appellee,**

v.

**FOUR WINDS SAILBOAT CENTRE, LTD., Appellant.**

**No. 598, Docket 82-7668.**

United States Court of Appeals, Second Circuit.

Argued/Submitted Dec. 15, 1982.

Decided March 1, 1983.

Patrick F. Foley, McCormick, Dunne & Foley, New York City (Robin Mary Heaney, McCormick, Dunne & Foley, New York City, of counsel), for appellant.

John R. Foster, Waesche, Sheinbaum & O'Regan, P.C., New York City, for appellee.

Before OAKES, VAN GRAAFEILAND and MESKILL, Circuit Judges.

PER CURIAM:

This appeal is said to be "of great importance" to the maritime and boat industries in this country. We think, however, that it involves some very simple principles of law, not the least of which is that our criterion for appellate review, even in this case under the admiralty jurisdiction, is the "clearly erroneous" standard of Fed.R.Civ.P. 52(a). *SS Amazonia v. New Jersey Export Marine Carpenters, Inc.,* 564 F.2d 5, 8 (2d Cir.1977). We do not view the findings of the United States District Court for the Eastern District of New York, Jacob Mishler, Judge, as "clearly erroneous." The principles of law flow readily from the facts. We affirm the judgment in favor of the plaintiff sailboat owner against the marina from whose dock the boat, left in its charge, disappeared.

Edward Snyder decided in 1979 to trade in his old sailboat for the next larger size. Dealing with a salesman with authority, Snyder bought a 27-foot "Cape Dory" from Four Winds Sailboat Centre, Ltd. (Four Winds), under a contract dated September 12, 1979. Under the contract he was given "free" storage for the winter, a factor in his decision to purchase in the autumn rather than the spring. Four Winds' president testified that the storage price was to be paid out of the salesman's commission on the sale. Snyder took delivery of his boat at the Four Winds marina in mid-October and took it out with the salesman on two or three short shake-down cruises, at the conclusion of which the salesman told Snyder where to tie up. After each cruise, Four Winds kept the keys to the four locks on the boat; Snyder had a duplicate key to the

engine. While registration of the boat had been applied for, there was only a temporary registration and the boat had no markings on it at the time that it was stolen.

Four Winds did not place fences around its floating docks, because it believed that such fences would interfere with navigation. It could not fence its property from the street because a next-door restaurant and Four Winds jointly owned and utilized the walkway. Four Winds did not maintain dock guards, alarms, or other security devices. It did have three mercury vapor lights in the docking and office area. It also had a locked boat storage building with an alarm.

On Sunday, November 4, 1979, Snyder visited the boat, but did not take it out. He told the salesman that he would not be using the boat any more and directed that it be put into land storage—i.e., the locked building with an alarm—where the work to be done on it in the spring, including painting the bottom, would be performed. The salesman said the boat would be taken out of the water sometime that week.

The last time the boat was seen was on Tuesday, November 6, 1979, at about 10:30 p.m. by the president of Four Winds who was checking the boats at his marina because someone had been reported as burglarizing another marina 100 feet from Four Winds. He discovered the Snyder boat missing the following morning. Four Winds reported the theft to the police and the Coast Guard, but the boat was never seen again. Evidently it was stolen; an unmarked boat did sail under the Atlantic Beach drawbridge at about midnight on November 6. The bridge is not far from the Four Winds marina, situated on the Woodcleft Canal, a navigable waterway.

Judge Mishler concluded that the relationship between Snyder and Four Winds was one of bailment for hire (from the date Snyder directed the salesman to store the boat) or at least for the mutual benefit of the parties (from the date the boat was delivered to Snyder at the Four Winds dock). He held under the law of New York that a bailee for hire, *Hasbrouck v. New York Central & Hudson River Railroad Co.*, 202 N.Y. 363, 373–74, 95 N.E. 808, 812 (1911), or for mutual benefit, *Aronette Manufacturing Co. v. Capitol Piece Dye Works, Inc.*, 6 N.Y.2d 465, 468, 190 N.Y.S.2d 361, 364, 160 N.E.2d 842, 844 (1959), is bound to exercise ordinary care in keeping and safeguarding property. Plaintiff met his burden of proof that Four Winds showed a lack of ordinary care under the circumstances. The "total absence" of security or deterrent measures other than the dock lighting was an open invitation to predators to make off with a new sailboat without registration marks, moored on a public waterway. The boat had been left, thus exposed, to the risk of theft for three days, and at a time when Four Winds had notice of a burglary in the immediate area. Judge Mishler thus awarded Snyder the cost of the sailboat, $32,261, together with prejudgment interest at 12% from and after the first day of the following spring. *Snyder v. Four Winds Sailboat Centre, Ltd.*, No. CV81–2286, mem. op. (E.D.N.Y. July 22, 1982).

Four Winds makes four arguments on appeal: (1) there was no bailment; (2) if there were any bailment it was merely gratuitous; (3) if there were a bailment for the parties' mutual benefit, liability must be founded on negligence; and (4) plaintiff failed to meet its burden of proof.

Four Winds' argument that there was no ailment rests on *Marino v. Gagliano*, 50 Misc.2d 499, 270 N.Y.S.2d 934 (Sup.Ct.1966), where a sailboat owner paid a fee for the opportunity to tie his boat at a slip assigned to him. But neither *Marino* nor *Blank v. Marine Basin Co., Inc.*, 178 A.D. 666, 165 N.Y.S. 883 (App.Div.1917), a decision on which *Marino* is based, involves storage as in this case. Moreover, in neither case is there any indication that the marina owner had exclusive custody of the boat, as here, where Four Winds kept the keys.

■ Judge Mishler correctly concluded that a bailment results for the mutual benefit of the vessel owner and the dock operator when a vessel is placed at a dock for storage. *Stegemann v. Miami Beach Boat*

*Slips, Inc.,* 213 F.2d 561, 564 (5th Cir.1954); *Selame Associates, Inc. v. Holiday Inns, Inc.,* 451 F.Supp. 412, 419 (D.Mass.1978). Although Four Winds charged no storage fee, the bailment was not gratuitous, but rather was incidental to the contract of sale, a transaction involving compensation. Four Winds gave Snyder "free" storage as an incentive to buy the yacht in the autumn; making the sale was a benefit to Four Winds resulting from the storage agreement.

■ We accept it as a fact that Four Winds could not erect a fence in the navigable waterway. But although there was little testimony on the common practice in the marina industry, a member of the Marine Division of the Freeport Police Department testified that a few marinas on these waterways have fencing preventing access from the land, and a few employ watchmen. Four Winds, however, had no security whatsoever other than lights and it was surely chargeable with knowledge of the fact that Snyder's boat, which he had directed be placed in the locked storage building, bore no markings and consequently was, like an automobile with keys, more likely to be subject to theft. While a marina is not an insurer for the boat owner who stores his boat there, its duty of ordinary and reasonable care requires that it take some measures, such as private security service, to protect the boats it stores.[1] *See English Whipple Sailyard, Ltd. v. The Yawl Ardent,* 459 F.Supp. 866, 874–76 (W.D.Pa. 1978); *Fireman's Fund American Insurance Co. v. Capt. Fowler's Marina, Inc.,* 343 F.Supp. 347, 350 (D.Mass.1971).

■ While the parties do not argue the point, here as in *Havas v. Victory Paper Stock Co., Inc.,* 49 N.Y.2d 381, 385, 402 N.E.2d 1136, 1138, 426 N.Y.S.2d 233, 236 (1980), whether the marina owed a duty to Snyder and, if it did, whether, in the face of that duty, the marina failed to act in a reasonably prudent manner, turns on foreseeability. The matter of foreseeability is peculiarly a question of fact, appropriately left to the factfinder. *Id.* at 388, 402 N.E.2d at 1139, 426 N.Y.S.2d at 237; *see Cullen v. BMW of North America, Inc.,* 691 F.2d 1097, 1103 (2d Cir.1982) (dissenting opinion). We have an obligation to accept a district court's findings unless clearly erroneous, Fed.R.Civ.P. 52(a), whether they are findings of ultimate or of subsidiary facts. *Pullman-Standard v. Swint,* 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982). At the very least, Judge Mishler found, when Four Winds learned that there was a thief in the area, it should have taken some additional precautions, and this it failed to do.

Judgment affirmed.

---

1. We do note that Four Winds had three other boats, two of them unmarked, at the same dock. We do not know, however, if they were locked or otherwise secured. In fact the record before us is exceptionally thin.