**COMMERCIAL UNION INSURANCE COMPANY, et al., Plaintiffs,**

v.

**BOHEMIA RIVER ASSOCIATES, LTD., et al., Defendants.**

Civ. No. S 89–2991.

United States District Court, D. Maryland.

July 22, 1991.

 

Stephen F. White, David W. Skeen, Wright, Constable and Skeen, Baltimore, MD, for plaintiffs.

William R. Dorsey, III, Semmes, Bowen & Semmes, Thomas M. DiBiagio, Office of the U.S. Atty., Baltimore, MD, for Bohemia River Associates, Ltd., Bohemia Yacht Services, Inc.

Mark T. Mixter, Law Office, Michael John Collins, Neuberger, Quinn, Gielen and Rubin, Baltimore, MD, for Bohemia Bay Yacht Harbour Condominium Ass'n, Inc., Nautical Properties Inc.

Robert H. Bouse, Jr., Anderson, Coe & King, Baltimore, MD, for Coates Const. Corp.

James W. Bartlett, III, Wilson, Elser, Moskowitz, Edelman and Dicker, Baltimore, MD, for Ernest Storr.

Steven G. Schwartz, Alexandria, VA, for Joseph Swerk, Harry Haas, Ruth Haas, Kenneth Kahn, Stanley F. Bystrek, Katherine M. Bystrek, Eric Johnson, Janet Johnson, Littleton W. Johnson, Charles Reaves.

John Thomas Ward, Quinn, Ward & Kershaw, Thomas J. Minton, Quinn, Ward and Kershaw, Baltimore, MD, for Isadore Shooster, Theodore Pietrzykowski.

Adam Daniel Metz, II, Law Office, Baltimore, MD, for Lois Schaeffer, Randy Schaeffer, Brian Hard, Janice Hard.

Warren B. Daly, Jr., Ober, Kaler, Grimes & Shriver, Baltimore, MD, for The Travelers Ins. Co.

Mark T. Mixter, Mindy S. Mintz, Law Office, Baltimore, MD, for Bohemia Bay Yacht Harbour Condominium Ass'n, Inc., Nautical Properties Inc.

SMALKIN, District Judge.

Presently before the Court are several motions for summary judgment. The twenty plaintiffs in this consolidated admiralty case are the owners of yachts that were either destroyed or damaged by fire at the Bohemia Bay Yacht Harbour ("marina") in Chesapeake City, Maryland, on January 6, 1989. Plaintiffs seek recovery from six defendants, five of whom were allegedly involved in the construction, development, or operation of the marina.

*Standard for Summary Judgment*

The Court will grant summary judgment if there is "no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial responsibility of informing the Court of the basis for summary judgment lies with the moving party. *See* Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Pulliam Inv. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987).

Once a motion for summary judgment is made and supported, the nonmoving party "may not rest upon the mere allegations or denials of [that] party's pleading, but … must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### I. *Motions of NPI, Condo Association, BRA, and BYS*

The difficulty with this admiralty case is that "the marina" was not a traditional marina. That is, instead of having one entity or individual own and run the facility, Bohemia Bay Yacht Harbour was developed as a "condominium marina." Individuals owned their slips, while the condo association maintained the common areas, including all of the piers. The plaintiffs in this case either owned or rented their slips.

Because of this condominium organizational structure, it is difficult to ascertain just who or what was "the marina." There are four defendant corporations that were allegedly involved with the development and operation of the marina, but all claim they were not "the marina," and that they therefore owed no duties to any of the plaintiff yacht owners. Nautical Properties, Inc. ("NPI"), Bohemia Bay Yacht Harbour Condominium Association ("Condo Association"), Bohemia River Associates ("BRA"), and Bohemia Yacht Services, Inc. ("BYS") all move for partial or complete summary judgment against the plaintiffs and several cross-claimants and counter-claimants. There are essentially four common issues before the Court regarding these four defendants: whether there is evidence to support claims for breach of bailment contracts, for negligence, for breach of warranty of workmanlike performance, and for breach of contract. Opposition and reply memoranda have been filed, and no oral hearing is necessary. Local Rule 105.6, D.Md.

### Discussion

*Was there a bailment?*

■ Defendants NPI, Condo Association, BRA, and BYS assert that there are no facts

allowing the plaintiffs and their insurers to allege claims under a bailment contract. All of the plaintiffs who leased their slips pursuant to a Slip Rental Agreement argue the existence of a bailment relationship, which they claim arose through the lease agreement. Additionally, plaintiff Brian Hard, owner of slip F–8, asserts a claim under a bailment theory.

■ Generally, a contract for the storage or repair of a boat constitutes a bailment agreement. *See, e.g., Snyder v. Four Winds Sailboat Centre, Ltd.,* 701 F.2d 251, 252 (2d Cir.1983); *Leyendecker v. Cooper,* 1978 AMC 1544 (D.Md.1978). In admiralty law, a bailor makes out a rebuttable presumption of negligence if the bailor proves that the bailed article was delivered in good condition and was returned damaged or not at all. *Leyendecker v. Cooper,* 1980 AMC 1061 (D.Md. 1979), *citing Richmond Sand and Gravel Corporation v. Tidewater Construction Corporation,* 170 F.2d 392 (4 Cir.1948). The burden of proof then shifts to the defendant/bailee who may rebut the presumption of negligence by showing that either the disaster was in no way attributable to the defendant's negligence, or that the defendant did indeed exercise the requisite care. *Id.*

The parties disagree as to whether a bailment requires exclusive control by the bailee. As plaintiffs note, the exclusive control requirement has been relaxed somewhat when the owner of the boat has access to it in dry storage. *See, e.g., Hicks v. Tolchester Marina, Inc.,* 1984 AMC 2027, 1983 WL 709 (D.Md.1983). But, as is true with the general law of bailment, the majority of the admiralty cases consider the bailee's exclusive right to possess the boat a major factor which points in the direction of an admiralty bailment. *Snyder,* 701 F.2d at 252 (bailment contract where marina kept only keys to locks on boat); *Fletcher v. Port Marine Center, Inc.,* 1990 AMC 2877, 2880, 1990 WL 255536 (D.Mass.1990) (no bailment where plaintiff fails to show exclusive control); *Continental Insurance Co. v. Washeon Corp.,* 524 F.Supp. 34, 37 (E.D.Mo.1981) (bailee must have exclusive right to possession, even as against the owner). The rebuttable presumption of negligence given a bailor makes

sense if the bailee has exclusive control, because it is then the bailee who is in the best position to explain the loss.

■ Plaintiffs' failure to assert that either the marina or any of the defendants had the exclusive right to control the vessels, is, in itself, enough to deny them the benefit of the bailment presumption. *Snyder,* 701 F.2d at 252; *Fletcher,* 1990 AMC at 2880, 1990 WL 255536; *Continental Insurance,* 524 F.Supp. at 37. In *Rogers v. Yachts America, Inc.,* 1983 AMC 417, 420 (D.Md.1982), cited repeatedly by plaintiffs, Judge Young held that a contract for the storage of a boat on *land* constituted a bailment contract. All of the plaintiffs who claim that there was a bailment in this case rented or owned *water* slips, and all but one plaintiff *rented* pursuant to a Slip Rental Agreement.

■ There is a distinction in the admiralty cases between what is essentially a mere lease and a bailment. A lease is an agreement to pay a fee for the opportunity to tie a boat at an assigned slip, *Fletcher v. Port Marine Center, Inc.,* 1990 AMC 2877, 1990 WL 255536 (D.Mass.1990), while a bailment is a contract for storage or repair. *Snyder v. Four Winds Sailboat Centre, Ltd.,* 701 F.2d 251 (2 Cir.1983). A plain reading of the lease agreements in this case indicates that the parties were contemplating a contract for the leasing of space at the marina.

According to some of the plaintiffs, defendant NPI served as the marina's management company and "undertook to perform certain services for yachts which entered into storage agreements with the marina ... includ[ing] keeping a general eye on the yachts, boarding them to correct obviously unsafe conditions such as failure of bilge pumps, etc." Memorandum of plaintiffs Shooster, Pietrzykowski, Savin and CIGNA, at 9. The Slip Rental Agreement in this case explicitly provides for the lease of space, and it does not list any other services. Additionally, because these alleged services were purportedly for the benefit of *all* of the slips in the marina, that is for those that were owned as well as leased, it is highly unlikely that the services arose out of the Slip Rental Agreement. *Id.,* Exhibit A at 15. In any event,

these alleged duties undertaken by the marina do not transform the lease agreement into a bailment contract, given the lack of exclusivity of possession. The plaintiffs who rented their slips were admittedly involved with a condominium regime, not the typical boat storage and repair bailment contract which is common in maritime affairs.

The above analysis applies with equal force to those plaintiffs who *owned* their slips, including plaintiff Hard. In addition, the Court has found no authority, and plaintiffs point to none, applying the bailment presumption where the article in question is located on the plaintiff's own property. Accordingly, the motions for partial and complete summary judgment will be granted as to all claims based on a bailment contract.

*Negligence*

■ Defendants NPI, the Condo Association, BRA, and BYS deny that they owed any duties to the plaintiffs. In admiralty, a duty of care arises if injury is foreseeable from the alleged negligent action, or if a relationship between the parties imposes it. T. Schoenbaum, *Admiralty and Maritime Law*, sec. 4–2, at 124 (1987).

■ As to the duty of NPI and BRA, it is clear from the record that there are genuine disputes of material fact which cannot be resolved at this time. The parties disagree about, *inter alia*, whether either NPI or BRA had a role in either operating or managing the Marina at the time of the fire.

■ Both defendant Condo Association, owner of all of the common property in the marina, and BYS, the admitted manager of the facility, owed a duty of ordinary diligence under the circumstances, *Bubla v. Bradshaw*, 795 F.2d 349, 354 (4 Cir.1986), *Doubleday v. Corinthian Yacht Club*, 1979 AMC 2578 (D.Md.1973), and plaintiffs have alleged sufficient facts to proceed to trial on the basis of negligence. For example, plaintiffs trace the cause of the fire to a space heater aboard the Yacht *Porscheman II*, asserting that defendants knew that space heaters were being used, while unattended, on several boats. Plaintiffs further point to defendants' failure to provide an effective watch service and to maintain an automatic sprinkler system or fire detectors.

■ Of course each defendant whose negligent act was a cause of an injury may be liable. This is so even if there was concurring negligence of another defendant. *Yellow Cab Co. v. Bonds*, 245 Md. 86, 225 A.2d 41 (1966).

■ NPI and the Condo Association attempt to avoid liability by pointing to a clause contained in the Slip Rental Agreement. The relevant portion of that clause provides that

The lessee agrees that neither NAUTICAL nor any principal, agent, servant, or employee of NAUTICAL shall be liable for any loss, damage, or personal injury to person or property of the LESSEE, including the boat, its inventory and equipment, whether such loss, damage or personal injury be occasioned by fire, theft, collision, ice, sinking, act of God or any other cause or condition.

In this Court, exculpatory clauses of this type are enforceable only if the clause sufficiently reflects the parties' intention "to absolve the marina of liability for its own negligence." *Rogers v. Yachts America, Inc.*, 1983 AMC 417, 420 (D.Md.1982), *citing Doubleday v. Corinthian Yacht Club*, 1979 AMC 2578, 2582–84 (D.Md.1973). Given that the above quoted language fails to explicitly include the word "negligence," or any similar language going to Nautical's own conduct, the clause is ineffective under the doctrine of *Doubleday.*

*Breach of Warranty of Workmanlike Performance*

■ NPI and the Condo Association also contend that there are no facts which allow plaintiffs to recover under a warranty of workmanlike performance. This admiralty contract doctrine stems from the case of *Ryan Stevedoring Co. v. Pan–Atlantic S.S. Corp.*, 350 U.S. 124, 133, 76 S.Ct. 232, 237, 100 L.Ed. 133 (1955), where the Supreme Court inferred an implied warranty by a stevedore to complete its work "properly and safely." In its present form, the warranty of workmanlike performance is an admiralty ap-

plication of the contract rule that one who undertakes to perform a service does so with the implicit agreement to perform in a workmanlike fashion. *See* T. Schoenbaum, *Admiralty and Maritime Law,* at 136.

Defendants essentially argue that because there was no contractual undertaking, there can be no warranty of workmanlike performance. Plaintiffs claim, however, that defendant NPI "undertook to perform certain services for yachts which entered into storage agreements with the marina ... includ[ing] keeping a general eye on the yachts, boarding them to correct obviously unsafe conditions such as failure of bilge pumps, etc." Memorandum of plaintiffs Shooster, Pietrzykowski, Savin and CIGNA, at 9. Similarly, BYS allegedly agreed to provide all plaintiffs a "Complimentary Winter–Watch Service," which included patrolling and observing boats and general conditions. Memorandum of Commercial Union Plaintiffs in Opposition to BRA and BYS. Plaintiff Kahn, and perhaps plaintiff Sanford, entered into an agreement for a more thorough "Winter Watch Service." If either defendant NPI or BYS undertook any of these services, then they must, under admiralty law, perform them in a workmanlike fashion. *Id.*

## Breach of Contract

Lastly, NPI, the Condo Association, BRA, and BYS maintain that summary judgment should be entered in defendants' favor on the breach of contract claims. While the Management Agreement and marina Rules and Regulations may serve as evidence of a duty upon the marina manager and owner, these documents will not support a claim for breach of contract. Plaintiffs point to no specific breach. Instead, they apparently claim that these defendants failed to "properly manage the marina," and failed to enforce the marina rules regarding hazards to the boats. While these allegations might be relevant to claims for negligence or for breach of a warranty of workmanlike performance, there is insufficient evidence to proceed on any breach of contract claim, other than the warranty of workmanlike performance discussed above. Accordingly, summary judgment must be granted as to all of the contract claims.

## II.  *Motion of Coates Construction Corporation*

Defendant Coates Construction Company moves for summary judgment on all claims against it. The two theories of plaintiffs' case against Coates are, first, that Coates breached its duty to the plaintiffs when it failed to install fire detection or safety equipment as required by the Maryland State Fire Prevention Code, COMAR 12.03.01, and, second, that Coates violated its common law duty to take reasonable fire safety precautions.

As to the fire code, the parties deem a major issue in this case to be which Fire Protection Association (NFPA) Standard, as incorporated in the Maryland Fire Prevention Code, applied to this marina at the time of the fire. The debate arises because the 1975 NFPA Standards contained no requirement for automatic sprinklers or fire detectors at covered marina slips. Then, effective *October 5, 1987,* Maryland adopted the 1986 NFPA Standard 303 along with an amendment which requires all covered marina slips in excess of 5,000 square feet to be equipped with automatic fire detection and sprinkler systems. COMAR 12.03.01.06.0. It is undisputed that the marina slips destroyed by fire were not so equipped with a sprinkler system. Plaintiffs apparently wish to point to these later regulations as evidence of the standard of care owed by Coates and others.

Even when the intricate and contested scenario surrounding the permitting process is examined in the light most favorable to the plaintiffs, the 1987 Code cannot, as a matter of law, serve as enough evidence of negligence to withstand defendant Coates' summary judgment motion. According to the plaintiffs, during a meeting on November 5, 1987, Deputy Fire Marshal Richard Powell and Chief Fire Protection Engineer (CFPE) John Bender decided to issue a notice that the marina was in violation of Section 4–4.2 of the 1986 regulations requiring sprinkler systems in marina buildings. The violation notice was delivered to a foreman for Coates. Thereafter, Charles Collett (marina developer) and Bruce Schoenbachler (Coates Project Manager) decided to request a meeting to discuss the sprinkler requirements.

On December 16, 1987, CFPE Bender attended a meeting along with Jim Callahan (Chief Building Inspector for Cecil County), Mr. Collett, and Mr. Schoenbachler. Regardless of the exact purpose of this meeting, at some point those present discussed the issue of which edition of the fire code applied to the covered sheds. According to CFPE Bender and the plaintiffs, "Bender was told that a building permit had previously been issued for the marina during January, 1987." Commercial Union Plaintiffs' Memorandum in Support of Motion for Summary Judgment, at 15. Based on this information, Bender issued a plan review which stated, "[s]ince a permit was granted in January, 1987, NFPA Standard 303, 1975 Edition shall apply." Then, at the request of either Mr. Collett or Mr. Drummond (Coates Representative), CFPE Bender wrote the following at the end of his comments: "P.S. This Review will supercede [sic] previous inspections reports based on compliance with the 1986 Ed. of NFPA 303. Specifically, automatic sprinkler protection is *not* required for the covered boat slips referenced by this building permit." Opposition of Commercial Union Plaintiffs, at 15, and exhibit no. 18. Also at this meeting, but without CFPE Bender, Building Inspector Jim Callahan required BRA to submit an application for a building permit for the piers and covered slips due to all of the confusion about the permits. In the lower left-hand corner of the application, Mr. Callahan inserted a note stating, "Effective date of this permit is December 30, 1986. Backdated due to human error and misunderstanding." Commercial Union Plaintiffs' Memorandum in Support of Motion for Summary Judgment, at 13. The permit eventually issued, however, was not backdated.

After the Fire Marshal's Office waived the sprinkler requirements, and after the fire, it apparently came to the attention of CFPE Bender (during a deposition) that there in fact had been no building permit prior to the December 1987 meeting specifically authorizing construction of the pier sheds. The January, 1987 permit relied upon by Bender, although he never examined it, authorized the construction of bathrooms only. Now, after the fire, plaintiffs argue that CFPE Bender's plan review was somehow tainted, because he claims he would not have applied the earlier code and waived the sprinkler requirement had he known that the January 1987 permit covered bathrooms only, and not the covered sheds.

Regulations such as those involved in this case may provide evidence of the standard of care, to be considered by the trier of fact. *Melerine v. Avondale Shipyards, Inc.,* 659 F.2d 706 (5 Cir.1981); *Provenza v. American Export Lines, Inc.,* 324 F.2d 660 (4 Cir.1963), *cert. denied,* 376 U.S. 952, 84 S.Ct. 970, 11 L.Ed.2d 971 (1964). However, the evidence of the later regulations will not be admissible in this case because they simply did not apply to this marina.

Plaintiffs had agreed that the marina renovations began on or around September 23, 1986, and the new regulations became effective on October 5, 1987. *See* Memorandum of Commercial Union Plaintiffs for Partial Summary Judgment, at 2, 20. Later, in their Opposition to Coates' Cross–Motion for Summary Judgment, at 12, plaintiffs attempt to put this fact in dispute by pointing to a portion of DFM Powell's deposition regarding a visit to the marina on November 4, 1987: "[t]he only thing that had not been put up was the covers, covers over F, G, E and D. None of the sheds had been erected but all piers and dockage was in place." This passage hardly allows an inference that construction was not yet underway. This is especially true considering DFM Powell's later affidavit, attached to Coates' Reply supporting Coates' Cross–Motion for Partial Summary Judgment, specifically refuting any ambiguity in his deposition testimony, and stating that construction had been substantially *completed* by November 4, 1987. Thus, there is no evidence to counter the parties' earlier agreement, as contrasted with clear evidence that construction began at least prior to October 5, 1987, the effective date of the Fire Prevention Code ("Code").

The Code states:

This Code may not apply to existing buildings and conditions, as defined in Regulation .05E, unless the State Fire Prevention Commission has determined that the continuation of the existing build-

ing or condition constitutes a distinct hazard adverse to life, property, public welfare or safety as to require correction. The State Fire Marshal or the legally appointed designee may make a determination of the applicability of this Code to any existing building or condition in it, subject to the right of appeal to the State Fire Prevention Commission.

COMAR Section 12.03.01.03. Regulation .05E defines an existing building as "any building, installation, plant, equipment or condition on which construction has commenced *or* a building permit has been obtained from the appropriate government agency before the effective date of this Code." While plaintiffs argue that the violation notice issued in November of 1987 constitutes an exception under the Code, because DFM Powell and CFPE Bender considered the lack of sprinklers a hazard within the Code, there is absolutely no evidence to support this contention. On the face of the Code, therefore, given that construction commenced prior to the effective date, the later regulations are inapplicable and cannot be used as evidence of the standard of care.

■ Furthermore, any alleged violation, including that issued in November 1987, may not be used as evidence, because the violation was explicitly mooted, in writing, by the later decision of the Fire Marshal's Office. Plaintiffs have no difficulty relying upon the authority of CFPE Bender to apply the Code to existing buildings in the first place, but they contest his ability to reverse his decision through the issuance of the December 16, 1987 waiver. Plaintiffs' earlier position, as reflected in their Memorandum in Support of Motion for Summary Judgment, was that "the defendants may not rely upon CFPE Bender's *error* in reversing his opinion regarding the applicable Fire Code." *Id.* at 30, emphasis added. By the time plaintiffs responded to Coates' Cross–Motion for Partial Summary Judgment (not to be confused with Coates' Motion for Summary Judgment which the Court is now addressing), plaintiffs described this case as having "everything to do with deception and misrepresentation...." But while plaintiffs themselves may now characterize CFPE Bender's earlier "error" as "deception," there is absolutely

no new evidence supporting any such theory. CFPE Bender's recollection, at the time of his deposition, was that either Mr. Collett or Mr. Drummond told him that a building permit had been issued "for a marina" in January, 1987. Mr. Callahan allegedly confirmed this fact. In actuality, *a* building permit had been issued, one that covered the bathrooms of the marina. This deposition testimony is not, in itself, sufficient evidence of fraud, and in the absence of any evidence of deception, Coates was justified in relying on the Fire Marshal's ruling.

Plaintiffs point to no additional reason why Defendant Coates should have questioned the Fire Marshal's ruling, and there are no indications that the ruling was invalid. CFPE Bender's ruling was made pursuant to Md.Ann.Code art. 38A, § 5 (1990), and COMAR Title 12, Subtitle 3. This case does not involve the more common situation where it is the governmental entity which later wishes to change an earlier ruling regarding a permit of some sort, *see, e.g., City of Hagerstown v. Long Meadow,* 264 Md. 481, 287 A.2d 242 (1972), nor is this a case where an administrative interpretation is clearly contrary to the statute. *See, e.g., Salisbury Beauty Schools v. State Board of Cosmetologists,* 268 Md. 32, 300 A.2d 367 (1973) (also involving a governmental entity, not a third party). In the absence of any fraud, wrongdoing, or illegality, this Court is not prepared to hold that a construction company should disregard explicit rulings of the Fire Marshal's Office, ignore the wishes of the property owner/developer and the Cecil County Government and unilaterally install fire prevention equipment.

■ Notwithstanding the regulations, plaintiffs also argue that Coates owed plaintiffs a common law duty to construct the marina with adequate fire prevention equipment. It is undisputed that Coates followed all of the plans and specifications, as well as the Fire Code deemed appropriate by the Fire Marshal's Office. The opinion of fire investigator Robert Jones that the fire could have been significantly reduced if the sprinklers or detectors had been installed is not evidence of any negligence on the part of

**810**

Coates. It is true that the marina did not follow the strong *recommendations* of the 1975 NFPA 303, but plaintiff has come forward with no evidence that such fire prevention equipment was the standard that a reasonable person in the marina construction industry would have observed at the time of the fire, under all the circumstances. Because there is absolutely no evidence of negligence on the part of Coates Construction Company, summary judgment must be granted in its favor on all counts.

### III. *Motion of Plaintiffs, Commercial Union, et al.*

■ Plaintiffs Commercial Union Insurance Co., as subrogee of several of the plaintiffs, requests the Court to grant them partial summary judgment by way of "an Order holding as a matter of law, that the Maryland State Fire Prevention Code required that the pier sheds at the Bohemia Bay Yacht Harbour should have been constructed in accordance with NFPA 303 ((1986) Ed.), and that no building permit existed authorizing construction of the covered slips at the marina prior to January 5, 1988." After reviewing plaintiffs' lengthy motion and the exhibits thereto, it becomes apparent to the Court that plaintiffs have failed to request any judgment, as to liability or otherwise, and thus the minimal initial burden imposed by Fed.R.Civ.P. 56(a) has not been met.

Plaintiffs wish the Court to rule, as a matter of law, that the later fire regulations apply to this case, and that no building permit was obtained before January 5, 1988. Unfortunately for plaintiffs, the Federal Rules of Civil Procedure simply do not provide a vehicle for these types of legal declarations at this stage of the case. (*But see* proposed Rule 16(c)(14), Fed.R.Civ.P., referring to proposed Fed.R.Civ.P. 56(a) regarding "summary establishment" of fact and/or law issues, a proposal which has been shelved by the Judicial Conference). Of course, as previously discussed, the Court has already found that the earlier regulations applied to Coates Construction Company, and that Coates reasonably relied upon CFPE Bender's ruling applying the earlier regulations.

■ Even if the Court chose to disregard the clear words of the statute and CFPE Bender's ruling, what would such a holding on these issues accomplish? Granting plaintiffs' request would certainly not give them any damages or any other relief sought. Neither would it dictate which parties are liable. Plaintiffs might believe, without stating as such, that the fire regulations establish a standard of care which was breached by the defendants. But, a simple declaration that the 1986 fire regulations apply, even if all parties conceded to the violation of this regulation, could not establish negligence on the part of any defendant, and indeed plaintiffs do not even attempt to argue so. Regulations such as those involved in this case may provide *evidence* of the standard of care, to be considered by the trier of fact, but the violation of a regulation certainly does not establish negligence per se. *Melerine v. Avondale Shipyards, Inc.,* 659 F.2d 706 (5 Cir.1981); *Provenza v. American Export Lines, Inc.,* 324 F.2d 660 (4 Cir.1963), *cert. denied,* 376 U.S. 952, 84 S.Ct. 970, 11 L.Ed.2d 971 (1964). In the case of Coates, the evidence is clearly insufficient to survive summary judgment, because there is no evidence that Coates violated any statute, and Coates was entitled, as a matter of law, to rely upon the actions of the Fire Marshal. The issue of whether the remaining defendants acted reasonably under the circumstances, even if the earlier regulations apply, remains at issue in this case, and thus summary judgment in favor of the plaintiffs is not proper at this time.

### IV. *Conclusion*

For the reasons stated above, an order will be entered, separately, as follows:

1. That defendants NPI and Condo Association's Motion for Partial Summary Judgment, and BRA and BYS' Motions for Summary Judgment be granted in part and denied in part, as follows:

a. that summary judgment be entered in favor of defendants on all bailment claims and breach of contract claims;

b. that summary judgment be denied as to all negligence claims and breach of warranty of workmanlike performance claims;

2. That defendant Coates' Motion for Summary Judgment be granted;

3. That defendant Coates' Cross–Motion for Partial Summary Judgment be mooted;

4. That the Commercial Union Plaintiffs' Motion for Partial Summary Judgment be denied; and

5. That Mr. Skeen coordinate a pretrial conference date with other counsel from the following dates and notify my chambers of the date selected by August 5, 1991: Friday, August 16, 1991 at 10:00 a.m.; Friday, August 23, 1991 at 10:00 a.m.; or Friday, September 6, 1991 at 2:30 p.m.